*1046430958*

2020 - 1747
Stallings

# IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

CHESAPEAKE OPERATING, L.L.C.,

Plaintiff,

v.

C.C. FORBES, LLC,

Defendant.

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR 0 2 2020

RICK WARREN
COURT CLERK

Case No. CJ-2020-1747

## PETITION

Plaintiff Chesapeake Operating, L.L.C. ("Plaintiff" or "Chesapeake") files this Original Complaint against C.C. Forbes, LLC ("Defendant" or "Forbes"). Chesapeake alleges and asserts the following against Defendant.

### PARTIES

1.     Plaintiff Chesapeake Operating, L.L.C. is a limited liability company organized under Oklahoma law with its principal place of business in Oklahoma County, Oklahoma.

2.     Defendant C.C. Forbes, LLC is a Texas limited liability company. Forbes may be served through its registered agent: Charles C. Forbes, Jr., 4783 S. Business 281, Alice, Texas 78333.

### JURISDICTION & VENUE

3.     This Court has personal jurisdiction over Defendant because Defendant has had minimum contacts with the forum state and Plaintiff's injuries arise out of Defendant's forum related activities.

4.     Venue is proper in this forum because the conduct giving rise to this action occurred in Oklahoma County.

5.     The amount in controversy exceeds seventy-five thousand dollars ($75,000).

## FACTUAL ALLEGATIONS

6.     The preceding allegations are fully incorporated by reference.

7.     Chesapeake's business operations include the exploration and production of oil and natural gas and their constituents.

8.     In conducting this business, Chesapeake enters into service agreements with a variety of oil and gas service providers.

9.     These service relationships are governed by master service agreements with various service providers.

10.     On or about February 12, 2010, Chesapeake entered into a master service agreement with Forbes. *See* **Ex. 1**, Forbes Master Service Agreement (without exhibits) (the "MSA").

11.     Among other things, the MSA requires Forbes to protect, defend, indemnify and hold Chesapeake and its invitees harmless for claims, demands, and causes of action made by Forbes's employees on account of bodily injury:

> 6.2    Contractor agrees to protect, defend, indemnify and hold harmless Company, its officers, directors, employees or their invitees, and any working interest owner or non-operator for whom Company is obligated to perform services, from and against all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof or the negligence or fault (active or passive) of any party or parties including the sole, joint or concurrent negligence of Company, any theory of strict liability and defect of premises, or the unseaworthiness of any vessel (whether or not preexisting the date of this Contract), arising in connection herewith in favor of Contractor's employees, Contractor's subcontractors or their employees, or Contractor's invitees on account of bodily injury, death or damage to property.

2

12.     Beginning in 2017, a claim falling within Forbes's indemnity obligations under the MSA was asserted by one of Forbes's employees against Chesapeake and certain of its invitees. *See* **Ex. 2**, Maldanado Petitions (the "Lawsuit").

13.     Accordingly, Chesapeake made demand upon Forbes under Section 6.3 of the MSA for Forbes to fulfill its defense and indemnity obligations. *See* **Ex. 3**, Chesapeake Demands.

14.     Following these repeated demands, Forbes finally agreed to accept Chesapeake's tender for defense and indemnity for the Lawsuit, without limitation or reservation:

-----Original Message-----
From: Michelle White <mwhite@ForbesEnergyServices.com>
Sent: Thursday, January 25, 2018 3:46 PM
To: David Donchin <ddonchin@dlb.net>; David Donchin <ddonchin@dlb.net>
Subject: Cause No 2017C113500, Aaron Maldonado vs. Advanced Hydrostatic, LLC, et al, Bexar County 285th Judicial District Court, Texas
Importance: High

Will and David,

Please accept this correspondence as CC Forbes' acceptance of Chesapeake's tender for defense and indemnity for claims made or to be made by Aaron Maldonado for an alleged loss that occurred on 7/9/2016, and related to the lawsuit referenced above.

Thank you.

---

From: Michelle White [mailto:mwhite@ForbesEnergyServices.com]
Sent: Wednesday, July 18, 2018 2:07 PM
To: Karl Koen <Karl.Koen@gkbklaw.com>
Subject: Cause No. 18-03-14119-ZVC: Aaron Maldonado v. Advanced Hydrostatic, LLC, et al; In the 365th Judicial District Court of Zavala County, TX

Karl,

Hope all is well. You may or may not know but CC Forbes did accept the defense and indemnity demand related to the above cause. I will be forwarding you a letter so it's on file and requesting periodic status updates. Just wanted to give you a heads up, and confirm you are lead counsel representing CHK. If you are no longer representing CHK in this matter, please direct me to the appropriate person/firm. Thanks.

Michelle White
Forbes Energy Services LLC
3000 South Highway 281
Alice, Texas 78332
Phone: (361) 664-6029, ext. 135
Cell: (832) 477-2645
mwhite@forbesenergyservices.com

3

15.     Despite Forbes's unqualified acceptance of Chesapeake's demand for defense and indemnity, Forbes failed to fully perform its contractual obligations.

16.     As a result of Forbes's breach of the MSA, Chesapeake was forced to resolve the Lawsuit, without the full contribution required from Forbes.

17.     In fact, Forbes attempted to limit its indemnity obligations just weeks before a scheduled mediation and an impending trial in the Lawsuit.

18.     Following resolution of the Lawsuit, Chesapeake again demanded that Forbes fulfill its indemnity obligations completely, as required by the MSA, and Forbes has continued its refusal.

19.     Chesapeake has incurred significant damage as a result of Forbes's breach of the MSA.

## CLAIMS AGAINST DEFENDANT

### Count 1 – Breach of Contract

20.     The preceding allegations are incorporated by reference.

21.     Chesapeake and Forbes entered into a valid and binding contract through the MSA.

22.     The MSA requires Forbes to defend and indemnify Chesapeake and certain of its invitees for personal injury claims made by Forbes's employees.

23.     The Lawsuit falls under Forbes's indemnity obligations and Chesapeake has made repeated demand on Forbes to fulfill its contractual obligations.

24.     Forbes has refused to fully perform under the terms of the MSA.

25.     Chesapeake has been damaged as a result of Forbes's breach of the MSA.

4

## PRAYER FOR RELIEF

Plaintiff requests that the Court enter judgment in its favor against Defendant as follows:

1. Award Plaintiffs actual monetary damages in excess of seventy-five thousand dollars ($75,000) and all other damages caused or sustained as a result of Plaintiff's claims in excess of seventy-five thousand dollars ($75,000);

2. Award Plaintiff its attorney fees, costs, and pre and post judgment interest; and

3. All other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all matters so triable.

Respectfully submitted,

Reagan E. Bradford, OBA #22072
Margaret E. Robertson, OBA #30235
Ryan K. Wilson, OBA #33306
THE LANIER LAW FIRM
431 W. Main Street, Suite D
Oklahoma City, OK 73102
(405) 698-2770
(405) 234-5506 fax
reagan.bradford@lanierlawfirm.com
maggie.robertson@lanierlawfirm.com
ryan.wilson@lanierlawfirm.com

*Attorneys for Plaintiff*
*Chesapeake Operating, L.L.C.*

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**

5

# MASTER SERVICE AGREEMENT

### Between

CHESAPEAKE OPERATING, INC.
and any present or future subsidiaries or
affiliates named directly or indirectly by
Chesapeake Operating, Inc.
(herein collectively "Company"),
P.O. Box 18496,
Oklahoma City, OK
73154

and

C C FORBES COMPANY LP,
and any present or future subsidiaries or
affiliates named directly or indirectly by
C C FORBES COMPANY LP,
(herein collectively "Contractor"),
P O BOX 250,
ALICE, TX
783330000

On this ___12 th___ day of ___February___, 2010

315071

EXHIBIT 1

**Table of Contents**

1. Agreement

2. Labor, Equipment, Materials, Supplies and Services

3. Reports to be furnished by Contractor

4. Independent Contractor Relationship

5. Insurance

6. Indemnity

7. Taxes

8. Audit

9. Laws, Rules and Regulations

10. Force Majeure

11. Assignments and Subcontractors

12. Contractor's Safety Responsibilities

13. Termination of Work

14. Government Regulations

15. Insolvency of Contractor

16. Contractor Employees under Louisiana Worker's Compensation

17. Complete Agreement

18. Time of the Essence

19. Exhibits

20. Insurance Exhibit A

21. Certificate of Insurance Exhibit B

22. Dallas/Fort Worth International Airport Exhibit C

23. Drug and Alcohol Free Workplace Policy Exhibit D

24. List of Potential Hazards Exhibit E

25. Disclosures Exhibit F

12/2009 Revision

## Glossary of Terms

**Additional Insured** – A person or organization not automatically included as an insured under an insurance policy, but for whom insured status is arranged, usually by endorsement. A named insured's impetus for providing additional insured status to others may be a desire to protect the other party because of a close relationship with that party or to comply with a contractual agreement requiring the named insured to do so.

**Borrowed Servant/Alternate Employer** – An endorsement that provides those scheduled as alternate employers with primary Workers' Compensation and Employers Liability coverage as if they were an insured in the policy. This endorsement is commonly used when a temporary help supplier (the insured) is required by its customer (the alternate employer) to protect the alternate employer from claims brought by the insured's employees.

**Endorsement** – A provision added to a policy, usually being written in on the printed page. It may also be in the form of a rider.

**Indemnify** – To make compensation to an entity, person, or insured for incurred hurt, loss, or damage.

**Indemnity** – Restoration to the victim of a loss up to the amount of the loss.

**Waiver of Subrogation** – The voluntary relinquishment by an insurer of the right to collect from another party for damages paid on behalf of the insured. The waiver of subrogation condition in current liability policies is referred to as "transfer of rights of recovery."

**Hazardous Substance – Any substance which is or becomes defined as 'hazardous substance', pollutant or contaminant and requires investigation or remediation under any federal, state or local statute or regulation. The presence any substance on the property causes or threatens to cause a nuisance upon the property or to adjacent properties, or poses or threatens to pose a hazard to the health or safety of persons on or about the property, or could constitute trespass on adjacent properties, that contain but not limited to gasoline, diesel fuel, petroleum hydrocarbons.**

12/2009 Revision

**WITNESSETH THAT,**

**WHEREAS,** Company in the Course of operations regularly and customarily enters into contracts with independent Contractors for the performance of service relating thereto; and

**WHEREAS,** Company desires, as a matter of company policy, to establish and maintain an approved list of Contractors and to offer work or contracts only to those Contractors who are included on such approved list; and

**WHEREAS,** Contractor represents that it has adequate equipment in good working order and fully trained personnel capable of efficiently operating such equipment and performing services for Company.

**NOW, THEREFORE, IN CONSIDERATION** of the mutual promises, conditions and agreements herein contained, the sufficiency of which is hereby acknowledged, and the specifications and special provisions set forth in the exhibits attached hereto and made a part hereof, the parties hereto mutually agree as follows:

**1.0   AGREEMENT**

1.1   Upon execution of this Agreement and compliance with its terms, Company agrees that the name of Contractor shall be added to the Company's approved list of Contractors and this Agreement shall remain in force and effect until canceled by either party by giving the other party ten (10) days notice in writing at the respective address of either party. If current work extends past ten (10) days, then cancellation shall not be effective until work is completed. This Agreement shall control and govern any and all performance of services and/or supply of materials and equipment by Contractor for Company, under subsequent written purchase orders, work orders, supplemental agreements or oral instructions, hereinafter collectively called an "Order". Upon acceptance of any Order by Contractor and without the necessity of any reference therein, this Agreement shall become an integral part of the Order. Agreements or stipulations in any such Order not in conformity with the terms and provisions hereof shall be null and void. No waiver by Company of any of the terms, provisions or conditions hereof shall be effective unless said waiver shall be in writing and signed by an authorized officer of Company.

1.2     This Agreement does not obligate Company to request services from Contractor nor does it obligate Contractor to accept orders for services from Company.

1.3     This Agreement is effective as of the first date of service, whether prior to and after the date of execution of this Agreement, and supersedes all previous contracts.

## 2.0     LABOR, EQUIPMENT, MATERIALS, SUPPLIES AND SERVICES

2.1     When notified by Company either verbally or by written work order, of the services and/or equipment desired, Contractor shall commence furnishing same at the agreed upon time, and continue such operations diligently and without delay, in strict conformity with the specifications and requirements contained herein and such work orders.

2.2     Contractor shall not employ in any work for Company any employee whose employment violates any labor, employment or other applicable laws. Contractor shall not employ in any work for Company any employee who is a minor.

2.3     All work or services rendered or performed by Contractor shall be done with due diligence, in a good and workmanlike manner, using skilled, competent and experienced workmen and supervisors. Contractor warrants full, clear and unrestricted title to all materials and equipment supplied by Contractor in performance of any Order free and clear of any and all liens, security interests, encumbrances and claims of others. Any portion of the work found defective or unsuitable and all damages resulting therefrom shall be removed, replaced or corrected by Contractor without additional cost or risk to Company. Contractor agrees to inspect all materials and equipment furnished by Company directly employed in the course of operations conducted hereunder and shall notify Company of any apparent defects therein before using such materials and equipment. Should Contractor use such materials and equipment without notifying Company of any defect, Contractor shall be deemed to have assumed all risk and liability for any mishap that may occur in operations conducted hereunder by reason of failure or defects in such materials and equipment. Contractor shall not be liable for claims due solely to latent defects.

2.4     Contractor agrees to insure that all machinery and equipment Contractor furnishes will be maintained in safe running order and inspected regularly to insure continues safe operations.

12/2009 Revision

2.5    The Contractor recognizes that the nature of the Contractor's services are such that the Contractor will have access to information which is of a confidential nature, which is of great value to the Company and which is the foundation upon which the Company's business is predicated.    The Contractor agrees not to disclose nor use for any purpose, other than the performance of this Agreement, any information, data or material, (regardless of the form) which is: (a) provided, disclosed or delivered to the Contractor by the Company, any officer, director, employee, agent, attorney, accountant, Contractor or other person or entity employed by the Company in any capacity, any customer, borrower or business associate of the Company or any public authority having jurisdiction over the Company or any business activity conducted by the Company: or (b) produced, developed, obtained or prepared by the Contractor (whether or not such information was developed in the performance of this Agreement) with respect to the Company or any of the Company's assets, oil and gas prospects, business activities, officers, directors, employees, borrowers or customers.   On request by Company, the Company will be entitled to a copy of any such documents or such information in the possession of the Contractor.    The Contractor also agrees that the provisions of this paragraph will survive the termination, expiration or cancellation of this Agreement and that on termination, expiration, or cancellation of this Agreement, the Contractor will deliver to the Company all of the information, data and material containing such information.

2.6    Company employees are prohibited from engaging in activities with vendors that promote the employee's interests ahead of Company or otherwise create a conflict of interest.   Examples of activities prohibited by Company follow.

- Accepting cash from a vendor in any amount;
- Accepting gifts or services from a vendor that obligates an employee to a vendor.   Any gift accepted by a Company employee valued at more than $100 must be reported by the employee to Company management;
- Soliciting or accepting kickbacks, bribes, payments or loans from a vendor;
- Holding a financial interest in a vendor (other than a financial interest in a publicly traded corporation whose securities are quoted and traded in the public securities market);
- Divulging confidential or proprietary information about Company that is not integral to the product or service provided by the vendor;

- Accepting discounts (other than those available to the general public) on personal purchases from a vendor;
- Circumventing or otherwise failing to comply with Company's established policies governing the competitive bidding process;
- Any activity that takes unfair advantage of a vendor through concealment, abuse or privileged or confidential information, misrepresentation or fraudulent behavior or cooperation with a vendor to take unfair advantage of another party.

In order to help ensure that these standards of conduct for dealings with vendors are met, Company has established a Vendor Protection Line with an independent party. If Contractor becomes aware of or suspects an employee of the Company has violated the guidelines for fair dealings set out in this contract, Contractor agrees to report the matter by calling the Vendor Protection Line at 1-800-576-5262 (organization code #30076). The caller will remain anonymous, and the details of the call will be immediately forwarded to a senior member of Company management, who will investigate the reported violation.

2.7    All Contractors who are transporting on Company's sites must follow these practices:

### Sec. 4:  Potential Spill Prevention and Control

*In the event that product is released during operations between the storage tanks and a transport, the truck driver will shut down the transfer pump, close all valves between the tanks and the truck, construct temporary berms, and call the posted emergency call number.*

### Sec. 5B:  Truck Loading Operations

*The transport truck operator is required to remain near the truck during all loading/unloading operations. The tank battery has been constructed utilizing a stairway and walkway with rails, which allows for inspection of tanks.*

*Truck operators follow industry accepted practices when transloading oil from tank batteries to trucks. Typical practice includes the following minimum activities:*

*\*Insure that all valves are closed before connecting hoses*
*\*Check to see that space is available for loading*
*\*Open valves and load truck*
*\*When loaded, shut off pump, close load line valves and truck valves*

*Empty hoses into appropriate containers

2.8   Drug and Alcohol Free Workplace.   Attached to this Agreement as Exhibit "D" is a copy of Company's Drug and Alcohol Free Workplace Policy (the "Drug and Alcohol Policy"). The Drug and Alcohol Policy shall apply to all employees and subcontractors of Contractor who enter on any property or facility owned, leased, or under the control of Company wherever located, including and without limitation field locations, buildings, structures, installations and vehicles (collectively "Company Property").

As a prerequisite to performing any services for Company, Contractor covenants and agrees to immediately (a) provide a copy of Company's Drug and Alcohol Policy to each of Contractor's employees and subcontractors whom Contractor reasonably anticipates may work on Company Property for Contractor, (b) notify each such employee and subcontractor that entering upon Company Property shall constitute consent to drug and alcohol testing by Company and a search of the person and his or her equipment, vehicle, and personal effects, and (c) notify each such employee and subcontractor that any person found in violation of Company's Drug and Alcohol Policy or who refuses to permit testing or inspection shall be immediately dismissed by Company from Company Property and barred from any further work for Company.

2.9   Attached hereto as Exhibit "E" is a general list of known and/or reasonably foreseeable potential hazards which apply to the activities and locations of Company, and its subsidiary, and/or affiliated companies. For location and job specific hazards, you must consult your local Company field representative prior to beginning work.   Contractor is responsible for notifying its employees, agents, and subcontractors of the potential hazards itemized in Exhibit "E".   Contractor is also responsible for ensuring that its employees, agents, and subcontractors comply with all requirements set forth in Exhibit "E".

## 3.0   REPORTS TO BE FURNISHED BY CONTRACTOR

3.1   The quantity, description and condition of the materials and supplies and/or services furnished shall be verified and checked by Contractor, and all delivery tickets shall be properly certified as to receipt by Contractor's representative.   Contractor must obtain approval of Company's representative for materials and supplies for which Contractor is to be reimbursed by Company.

12/2009 Revision

3.2   Contractor shall orally report to Company, as soon as practicable, followed by an appropriate written report, all accidents or occurrences resulting in death or injuries to Contractor's employees or third parties, or unintended release of hazardous substance, or damage to property of Company or third parties arising out of or during the course of work to be performed hereunder. Contractor shall furnish Company with a copy of all reports made by Contractor to Contractor's insurer or governmental authorities or to other parties of such accidents and occurrences.

3.3   Emergency responding Contractor shall provide Company with documentation of qualification for such work. Documentation should include, but not limited to, current employee certifications and contractor training policies. Incident logs and safety performance records shall be provided upon request.

## 4.0   INDEPENDENT CONTRACTOR RELATIONSHIP

In the performance of any work by Contractor for Company, Contractor shall be deemed to be an independent Contractor, with the authority and right to direct and control all of the details of the work, Company being interested only in the results obtained. However, all work contractor related shall meet the approval of Company and shall be subjected to the general right of inspection. Company shall have no right or authority to supervise or give instructions to the employees, agents, or representative of Contractor, and such employees, agents or representatives at all times shall be under the direct and sole supervision and control of Contractor. Any suggestions, advice or directions given by Company or its employees to Contractor or its employees shall in no way establish or be evidence of an intent to create a master and servant or principal and agent relationship between Company and Contractor. It is the understanding and intention of the parties hereto that no relationship of master and servant or principal and agent shall exist between Company and the employees, agents, or representatives of Contractor, and that all work or services covered hereby shall be performed at the sole risk of Contractor.

## 5.0   INSURANCE

5.1   At any and all times during the term of this Contract, Contractor shall at Contractor's expense maintain, with an insurance company or companies authorized to do business in the state where the work is to be performed or through a self-insurance program, insurance coverages of the kind and in the minimum amounts as follows:

(a)   Workers' Compensation, including coverage for occupational disease, and Employer's Liability Insurance covering all employees in compliance with all applicable state and federal law.   This insurance shall be in an amount not less than:

Workers' Compensation:   Statutory

If Contractor is a sole proprietor, Contractor must make the following election:

_____   I elect to be excluded from Workers' Compensation coverage as a Sole Proprietor under state law.   I further certify that I will provide an insurance certificate evidencing Workers' Compensation insurance is in place should I hire other parties to perform any services on my behalf for Company.

_____   I elect to be covered under Workers Compensation insurance as a Sole Proprietor.   A Certificate of Insurance evidencing Workers' Compensation coverage is enclosed.

(b)   Employer's Liability Insurance in the limits described in Exhibit "A" attached hereto for each accident, occurrence, or disease covering claims by the agents, servants or employees of Contractor.

(c)   Insurance provided in (a) and (b) above shall include a "Borrowed Servant/Alternate Employer Endorsement", providing for claims brought against Company or Company barges or other vessels, in rem or in personam, by any agent, servant or employee of Contractor as a "borrowed servant" to be treated as a claim against Contractor.

(d)   Commercial General Liability Insurance, on an "Occurrence" form unless otherwise agreed to in writing by Company, including operations of Independent Contractors; Contractual Liability to the fullest extent permitted by law, including Action Over/Indemnity Buyback; Products and Completed Operations; Explosion, Collapse and Underground Property Damage Hazards; Pollution Liability; and Underground Resources with a combined single limit for Bodily Injury, Personal Injury and Property Damage liability in an amount no less than those limits described in Exhibit "A" attached hereto.

12/2009 Revision

(e)    Automobile Liability Insurance covering all owned, non-owned and hired vehicles with a combined single limit for Bodily Injury and Property Damage liability in an amount not less than those limits described in Exhibit "A" attached hereto. If hauling hazardous waste, such insurance shall have the MCS-90 endorsement attached and the pollution exclusion deleted.

(f)    Property Insurance and/or Rig Physical Damage Insurance on an "All Risk" or other form satisfactory to Company, covering the insurable value of all Contractor's property and in amounts of insurance sufficient to comply with the minimum coinsurance requirements of the policies.

(g)    In the event Contractor moves equipment, materials and supplies, Contractor will carry cargo insurance in an amount sufficient to cover the replacement cost of the equipment, materials or supplies being moved.

(h)    The amounts of insurance required in this section 5.1 may be satisfied by the purchase of separate Primary and Umbrella (or Excess) Liability policies which when combined together provide the total limits of insurance specified.

(i)    Contractor further agrees to provide additional amounts or kinds of insurance as may be reasonably deemed necessary from time to time in accordance with the ongoing nature of operations, and changes in exposure to loss, to the extent the insurance is commercially available.

5.2    Prior to commencing work for Company, Contractor shall obtain from its insurers a waiver of subrogation against (i) Company; (II) any party for whom Company is performing operations or services for including co-lessees, co-owners, partners or joint venturers, and (III) any other party identified by Company to which Company has agreed to provide insurance protection or benefit and/or to provide defense and/or indemnity in all of the insurance policies set forth in this Section, to include all insurance carried by Contractor protecting against loss of or damage to its property and equipment employed in the performance of this Agreement whether the same be set forth in this Section or not.

5.3    All such insurance shall be carried in a company or companies acceptable to Company and shall be maintained in full force and effect during the term of this Contract, and shall not be canceled, altered, or amended without thirty (30) days prior written notice having first been furnished Company.

12/2009 Revision

Prior to commencing work for Company, Contractor shall name (I) Company; (II) any party for whom Company is performing operations or services for including co-lessees, co-owners, partners or joint venturers, and (III) any other party identified by Company to which Company has agreed to provide insurance protection or benefit and/or to provide defense and/or indemnity, as an additional insured to the fullest extent permitted by law on all Contractor required insurance with the sole exception of worker's compensation. To the extent to which Contractor assumes liability hereunder, or agrees to indemnify Company, (I) all Contractor required insurance shall be primary to any insurance of Company that may apply to such occurrence, accident or claim and (II) no "other insurance" provision shall be applicable to Company and its affiliated, subsidiary and/or interrelated companies, by virtue of having been named an additional insured or loss payee under any policy of insurance. Further, the Commercial General Liability policies of Contractor shall delete any provisions that might exclude coverage to the Company for claims by Contractor's employees on the grounds of that employment relationship.

5.4 Certificates of insurance acceptable to Company evidencing the coverage required by Company shall be provided by Contractor to Company prior to commencement of performance of services or the delivery of materials and equipment under this Agreement or an Order.

5.5 In the event Contractor is a self-insurer and Company has consented to Contractor being a self-insurer as to any one or more of the risks as to which coverage is herein required, evidence of such consent must be in writing and approved by a representative of Company authorized to enter into such consent agreement.

5.6 Contractor, in its agreements with its subcontractors, shall require subcontractors to obtain, maintain and keep in force during the time in which they are engaged in performing the Work hereunder, insurance and to include insurance contractual provisions which are substantially similar in coverage scope and endorsements to that which Company requires of Contractor herein. As set forth in Section 11, Contractor shall be liable for any deficiencies in subcontractor's insurance coverage.

5.7 These requirements shall be conditions precedent to the payment of any sums that may be due Contractor.

## 6.0   INDEMNITY

6.1   It is agreed between Company and Contractor that certain responsibilities and liabilities for personal injuries and property damage arising out of the performance of this Agreement should be allocated between them in order to avoid protracted litigation between Company and Contractor along with the associated legal expenses and so that insurance or self-insurance may be arranged by each party as necessary to protect them against these exposures to loss.  The following sets out the specifics of the agreements between Company and Contractor as to the allocation of the responsibilities and liabilities.

6.2   **Contractor agrees to protect, defend, indemnify and hold harmless Company, its officers, directors, employees or their invitees, and any working interest owner or non-operator for whom Company is obligated to perform services, from and against all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof or the negligence or fault (active or passive) of any party or parties including the sole, joint or concurrent negligence of Company, any theory of strict liability and defect of premises, or the unseaworthiness of any vessel (whether or not preexisting the date of this Contract), arising in connection herewith in favor of Contractor's employees, Contractor's subcontractors or their employees, or Contractor's invitees on account of bodily injury, death or damage to property.**

6.3   **Company agrees to protect, defend, indemnify and hold harmless Contractor, its officers, directors and employees or their invitees, from and against all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof or the negligence or fault (active or passive) of any party or parties including the sole, joint or concurrent negligence of Contractor, any theory of strict liability, any professional liability, and defect of premises, or the unseaworthiness of any vessel (whether or not preexisting the date of this Contract), arising in connection herewith in favor of Company's employees, Company's contractors (other than Contractor herein) or their employees, or Company's invitees on account of bodily injury, death or damage to property.**

6.4   **Contractor agrees to protect, defend, indemnify and hold harmless Company, its officers, directors, employees or their invitees, and any working interest owner or non-operator for whom Company is performing services, from and against all claims, demands, and**

causes of action of every kind and character arising from the acts of Contractor in favor of third parties and persons not employed or contracted by Contractor or Company on account of bodily injury, death or damage to property.

**6.5** **Company agrees to protect, defend, indemnify and hold harmless Contractor, its officers, directors, employees or their invitees from and against all claims, demands, and causes of action of every kind and character arising from the acts of Company in favor of third parties and persons not employed or contracted by Contractor or Company on account of bodily injury, death or damage to property.**

6.6 Contractor represents and warrants that it owns or has the right to use and construct any and all equipment, tools, materials, computer software or hardware, data, trade secrets and know-how used by Contractor in connection with services provided to Company.  Contractor represents and warrants that such use does not violate or infringe on any patents issued or applied for or licenses of third parties.   Contractor further represents and warrants that such  use does not constitute, directly or indirectly, the theft or misappropriation of any third parties' trade secrets. The indemnities of paragraphs 6.2 and 6.4 shall apply to any violations of the warranties and representations of this paragraph.  In addition to such indemnities, Contractor agrees to indemnify and hold Company harmless from any and all claims, demands, and causes of action of every kind and character in favor of or made by a patentee, licensee, or claimant of any rights or priority to such tool or equipment, or the use or construction thereof, that may result from or arise out of furnishing or use of any such tool or equipment by Contractor in connection with the work

6.7 Each party shall notify the other party immediately of any claim, demand, or suit that may be presented to or served upon it by any party arising out of or as a result of work performed pursuant hereto, affording such other party full opportunity to assume the defense of such claim, demand, or suit and to protect itself under the obligations of this Section. Each party covenants and agrees to support this indemnity agreement by available liability insurance coverage as set forth in Paragraphs 5.1 (a) through (e) above.  In the event that this Contract is subject to the indemnity limitations of any applicable State law, and so long as that law is in force, then it is agreed that the above obligations to indemnify are limited to the extent allowed by law. Additionally, the parties agree that:

(a) In the event that this Agreement is subject to the indemnity limitations of Act 427 of the 1982 Louisiana Legislature, and so long as that act is in force, provisions 6.2, 6.3, 6.4 and 6.5 herein shall not

be applicable to the services performed in the State of Louisiana. In lieu thereof, each party agrees to defend, indemnify, save and hold the other party harmless from and against all claims and causes of action to the extent such arise out of the indemnifying party's negligence, gross negligence, strict liability or breach of contract.

(b)     In the event that this Agreement is subject to the indemnity limitations of Chapter 127 of the Texas Civil Practices and Remedies Code, and so long as such limitations are in force, then it is agreed that the above obligations to indemnify are limited to the extent allowed by law, and each party covenants and agrees to support this indemnity agreement by liability insurance coverage, with limits of insurance required of each party equal to those specifically set forth in Paragraphs 5.1 (a) through (e) above. In the event that this contract is subject to any other applicable state indemnity limitation, it is agreed that the above obligations to indemnify are limited to the extent allowed by law.

(c)     In the event that this Agreement is subject to the indemnity limitations in New Mexico Statutes, Sec. 56-7-2, and so long as that act is in force, provisions 6.2, 6.3, 6.4 and 6.5 herein shall not be applicable to the services performed in the State of New Mexico. In lieu thereof, each party agrees to defend, indemnify, save and hold the other party harmless from and against all claims and causes of action to the extent such arise out of the indemnifying party's negligence, gross negligence, strict liability or breach of contract.

6.8     In claims against any person or entity indemnified under this Section 6 by an employee of the Contractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this Section 6 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor under Workers' or Workmen's Compensation acts, disability benefit acts or other employee benefit acts.

6.9     If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnity voluntarily assumed under this Article which Contractor agrees will be supported either by equal liability insurance or voluntarily self-insured, in part or whole, exceeds the maximum limits permitted under such law, it is agreed that said insurance requirements or indemnity shall automatically be amended to conform to the maximum monetary limits permitted under such law.

6.10. The indemnity provisions of this Agreement shall apply to any and all work performed, services rendered or material supplied by Contractor on behalf of Company whether Company is acting in the capacity of an operator, non-operator or working interest owner.

6.11 Contractor assumes the risk of loss at all times for damages to or destruction of Contractor's equipment and materials, regardless of how such damage or destruction occurs. Company shall be under no liability to reimburse Contractor for any such loss or damage thereto. Contractor shall protect, defend, indemnify and hold harmless Company from any and all damage or loss thereof, regardless of the negligence or fault (active or passive) of any party or parties including the sole, joint or concurrent negligence of Company, any theory of strict liability and defect of premises or the unseaworthiness of any vessel (whether or not preexisting the date of this Contract), arising in connection herewith in favor of Contractor, Contractor's contractors, or Contractor's invitees.

6.12 Company assumes the risk of loss at all times for damage to or destruction of Company's equipment and materials except where such damage or destruction results from or arises out of Contractor's operations.

6.13 Any defense and indemnity by either party under these provisions shall include, but not be limited to, all expenses of litigation, court costs, and attorney fees that may be incurred by or assessed against the party being indemnified.

## 7.    TAXES AND CLAIMS

7.1 Contractor agrees to pay all taxes, licenses, and fees levied or assessed on Contractor in connection with or incident to the performance of this Agreement by any governmental agency and unemployment compensation insurance, old age benefits, social security, or any other taxes upon the wages of contractor, its agents, employees, and representatives. Contractor agrees to require the same agreements and be liable for any breach of such agreements by any of its subcontractors.

7.2 Contractor agrees to reimburse Company on demand for all such taxes or governmental charges, State or Federal, that Company may be required or deem it necessary to pay on account of employees of Contractor or its sub-contractors. Contractor agrees to furnish Company with the information required to enable it to make the necessary reports and to pay such taxes or charges. At its election, Company is authorized to deduct all sums so paid for such taxes and governmental charges from such amounts as may be or become due to Contractor hereunder.

12/2009 Revision

16

7.3    Contractor agrees to pay all claims for labor, materials, services, and supplies furnished by Contractor hereunder and agrees to allow no lien or charge to be fixed upon property of Company or the party for whom Company is performing services. Contractor agrees to indemnify, protect, defend, and hold Company harmless from and against all such claims or indebtedness incurred by Contractor in connection with the services as provided hereunder. It is agreed that Company shall have the right to pay any such claims or indebtedness out of any money due or to become due to Contractor hereunder. Notwithstanding the foregoing, Company agrees that it will not pay any such claim or indebtedness as long as same is being actively contested by Contractor and Contractor has taken all actions necessary (including the posting of a bond when appropriate) to protect the property interests of Company and any other party affected by such claim or indebtedness.

7.4    Before Company makes payments to Contractor, Company may require Contractor to furnish proof that there are no unsatisfied claims for labor, materials, equipment, and supplies or for injuries to persons or property not covered by insurance.

## 8.    AUDIT

Contractor shall maintain, and shall cause any of Contractor's subcontractors to maintain, a true and correct set of records pertaining to services performed in compliance with any Order and all transactions related thereto, and retain all such records for a period of not less than two (2) years after completion of services performed. Company may, at its expense, require Contractor, or any of Contractor's subcontractors, at any time within said two year period to furnish sufficient evidence, with documentary support, to enable Company to verify the correctness and accuracy of payments to Contractor or such subcontractors. Within the time limit herein established, Company may, following written notice to Contractor or such subcontractor, examine accounts, invoices, tickets and other documents exclusively related to services performed hereunder, or pursuant to any other Order previously executed between the parties hereto, in order to verify the accuracy and compliance with this provision.

## 9.    LAWS, RULES AND REGULATIONS

9.1    Company and Contractor respectively agree to comply with all laws, rules, and regulations, which are now or may become applicable to operations covered by this Agreement or arising out of the performance of such operations. If either party is required to pay any fine or penalty resulting from the other party's failure to comply with such laws, rules, or regulations,

the party failing to comply shall immediately reimburse the other for any such payment.

9.2  <u>Immigration Laws.</u> Contractor shall comply with the Immigration Reform and Control Act of 1986, as amended, the Immigration and Nationality Act, as amended, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended, and any successor statutes, laws, rules and regulations thereto (collectively, the "Immigration Laws"). In addition to complying with the Immigration Laws, Contractor agrees to the following:

  a.  Contractor shall maintain photocopies of all supporting employment eligibility and identity documentation for all employees who are hired by Contractor.

  b.  Contractor represents and warrants that it has not been the subject of enforcement or other action by U.S. Immigration and Customs Enforcement ("ICE") within the two year period prior to the effective date of this Agreement, except for those enforcements or actions disclosed herein. Any disclosure by Contractor pursuant to this subparagraph shall be attached to Exhibit "F" on Contractor's or its legal counsel's letterhead and shall be described in reasonable detail each event of enforcement or action by ICE. Contractor further represents and warrants that the disclosure contained in Exhibit "F" is correct and complete and does not fail to state any material fact necessary in order to make the representations, warranties or statements contained herein or therein not misleading. Company reserves the right to terminate this Agreement (including all outstanding work) immediately, in its sole discretion depending upon the information provided by the Contractor pursuant to this subparagraph. From time to time as Company may request, Contractor shall provide Company with a written certification making the representations and warranties set forth in this subparagraph.

  c.  Contractor shall be responsible for properly completing Form I-9's for all its employees performing

services under this Agreement. From time to time as Company may request in its sole discretion, Contractor shall, at its expense, audit such Form I-9's as Company may designate. At Company's option, such audit shall be performed either by Contractor or by Contractor's third party immigration attorney or consultant, who must be experienced and trained in the field of immigration compliance. Such audit shall be completed within five days after Company's request, and Company may suspend the services pending the completion of any such audit. Upon completion of the audit, Contractor or its third party auditor, as applicable, shall execute a certification representing that all employees of Contractor performing services under this Agreement are authorized to work for Contractor, and that Contractor is in full compliance with the Immigration Laws. Contractor shall retain all such certifications on file during the term of the Agreement, and shall deliver any or all such certifications to Company upon Company's request.

d. During the term of this Agreement, and whether or not any work or services are then outstanding, Contractor shall immediately, and in any event within one (1) hour, notify Company either by facsimile, in person or by telephone (not voice mail) of any unscheduled inspections, work site enforcement actions, investigations, inquiries, visits or audits conducted by the United States Department of Homeland Security ("DHS") or any other governmental agency or authority related to environmental, immigration, or employee-safety issues Contractor, its agents or employees.

e. Contractor represents and warrants that it is aware of, understands and is in compliance with the Immigrations Laws, and is in compliance, and Contractor is not knowingly employing any workers performing services under this Agreement in violating of the Immigration Laws. **Contractor agrees to protect, defend, indemnify and hold harmless Company, its officers, directors, employees or their invitees, and any working interest owner or non-operator for whom Company is performing services, from and against all claims, demands, and causes of action of every kind and character arising from Contractor or its**

12/2009 Revision

19

Subcontractors employing employees performing labor or services under this Agreement who are not authorized to work in the United States for Contractor or arising from any violations of the Immigration Laws by Contractor or its Subcontractors in the performance of this Agreement. 9.3 In the event any provision of this Agreement is inconsistent with or contrary to any applicable law, rule, or regulation, or if any provision of this Agreement is found by a court of competent jurisdiction to be invalid or unenforceable, that provision will be deemed to be modified to the extent required to comply with said law, rule, or regulation, or to make it valid and enforceable, and this contract as so modified, shall remain in full force and effect. If said provision cannot be so modified, it shall be deemed deleted and the remainder of the Agreement shall continue and remain in full force and effect.

9.4  This Agreement shall be governed, construed and interpreted in accordance with the laws of Oklahoma.

## 10.0  FORCE MAJEURE

Except for the duty to make payments hereunder when due, and the indemnification provisions under this Contract, neither Company nor Contractor shall be responsible to the other for any delay, damage or failure caused by or occasioned by a Force Majeure Event. As used in this Contract, "Force Majeure Event" includes: acts of God, action of the elements, warlike action, insurrection, revolution or civil strife, laws, rules and regulations of any governmental authorities having jurisdiction in the premises or of any other group, organization or informal association (whether or not formally recognized as a government); acute and unusual labor or material or equipment shortages, or any other causes (except financial) beyond the control of either party. Delays due to the above causes, or any of them, shall not be deemed to be a breach of or failure to perform under this Contract. Neither Company nor Contractor shall be required against its will to adjust any labor or similar disputes except in accordance with applicable law.

## 11.0  ASSIGNMENTS and SUBCONTRACTORS

11.1 Company and Contractor agree that neither party may assign this Agreement or any sum that may accrue to it, without the prior written consent of the other party

11.2 Subject to the foregoing, Contractor shall have the right to subcontract portions of the work or services (but not all of the work or services) as it shall determine to be necessary to sub-contractors. Contractor acknowledges and agrees that:

(a) the provisions of the Section shall not operate to limit or relieve in any way any obligation of Contractor to Company under this Contract, including obligations with respect to the conduct, quality and completion of the work or services, in strict accordance with the terms of this Contract; and

(b) it will be liable to Company for all acts, omission and defaults of the subcontractors (and those of the employees, agents and invitees of the subcontractors) relating to, or in any way connected with the work or services, to the same extent as if they were the acts, omissions and defaults of Contractor. **Contractor agrees to protect, defend, indemnify and hold harmless Company, its officers, directors, employees or their invitees, and any working interest owner or non-operator for whom Company is performing services, from and against all claims, demands, and causes of action of every kind and character arising from the acts, omissions and default of Contractor's subcontractors to the same extent as if they were the acts, omissions and defaults of Contractor.**

## 12.0   CONTRACTOR'S SAFETY RESPONSIBILITES

12,1 Contractor agrees to and shall be solely responsible for the safety of its employees, subcontractors, consultants and agents, as well as its subcontractors' employees and agents and their respective invitees and guest and the training of such individuals in procedures adequate to insure safe operations and safe operation of any machinery or equipment provided by Contractor or its subcontractors.

12.2 Contractor agrees to provide the above listed persons with all necessary protective and safety equipment and training for the proper use of such equipment.

## 13.0   TERMINATION OF WORK

13.1   Termination by Contractor: Contractor may terminate any subcontract for the same reasons and under the same circumstances and procedures with respect to Company as Company may terminate with respect to Contractor under this Contract. In the event of such termination by the Contractor for

any reason which is not the fault of Contractor, sub-contractors or their agents or employees or other persons performing portions of the Work under contract with Contractor, Contractor shall be entitled to recover from Company payment for work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

13.2    Termination by Company: If Contractor persistently or repeatedly fails or neglects to carry out its obligations in accordance with this Agreement and fails within seven days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, Company may, after seven days following receipt by Contractor of an additional written notice and without prejudice to any other remedy Company may have, terminate the contract and finish Contractor's obligations by whatever method Company may deem expedient. If the unpaid balance of the contract sum exceeds the expense of finishing Contractor's obligations, such excess shall be paid to Contractor, but if such expense exceeds such unpaid balance, Contractor shall pay the difference to Company.

13.3    The foregoing paragraph shall in no way limit Company's right to terminate Contractor without additional compensation in the event of Contractor's breach of this Contract.

## 14.0   GOVERNMENT REGULATIONS

The following regulations, where required by law, are incorporated in the agreement by reference as if fully set out:

(1)    The Equal Opportunity Clause prescribed in 41 CFR 60-1.4;
(2)    The Affirmative Action Clause prescribed in 41 CFR 60-250.4 regarding veterans and veterans of the Vietnam era;
(3)    The Affirmative Action Clause for handicapped workers prescribed in 41 CFR 60-741.4;
(4)    The Certification of Compliance with Environmental Laws prescribed in 40 CFR 15.20.
(5)    The Occupational Safety and Health Act regulations prescribed in 29 CFR 1910 and 29 CFR 1926.
(6)    The Department of Transportation regulations prescribed in 49 CFR.

## 15.   INSOLVENCY OF CONTRACTOR

In the event Contractor shall be adjudged bankrupt, make a general assignment for the benefit of creditors, or if a receiver shall be appointed on account of

12/2009 Revision

Contractor's insolvency, or in the event Contractor does not correct or, if immediate correction is not possible, commence and diligently continue action to correct, any default of Contractor to comply with any of the provisions or requirements of this Agreement and all Orders within ten (10) days after written notice by Company, Company may, by written notice to Contractor, without prejudice to any other rights or remedies which Company may have, refuse to allow further performance of services by Contractor. Company may complete the performance of services by such means as Company selects and Contractor shall be responsible for any additional costs incurred by Company in so doing. Any amounts due Contractor for services performed by Contractor in full compliance with the terms of this Agreement and any Order prior to cessation of the performance of services shall be subject to setoff of Company's additional costs of completing the performance of services and other damages incurred by Company as a result of Contractor's default. Waiver by Company of any default of Contractor shall not be considered to be a waiver by Company of any provision of this Agreement or of any subsequent default by Contractor.

16. **CONTRACTOR'S     EMPLOYEES     UNDER     LOUISIANA     WORKERS' COMPENSATION ACT**

In all cases where Contractor's employees (defined to include Contractor's direct, borrowed, special, or statutory employees) are covered by the Louisiana Workers' Compensation Act. La. R.S. 23:1021 *et seq* Company and Contractor agree that all work and operations performed by Contractor and its employees pursuant to the Agreement are an integral part of and are essential to the ability of Company to generate Company's goods, products and services for purposes of La. R.S. 23:1061 (A)(1). Furthermore, Company and Contractor agree that Company is the statutory employer of Contractor's employees for purposes of La. R.S. 23:1061 (A)(3). Irrespective of Company's status as the statutory employer or special employer (as defined in La. R.S. 23:1031 (C)) of Contractor's employees, Contractor shall remain primarily responsible for the payment of Louisiana Workers' Compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from Company.

17. **COMPLETE AGREEMENT**

This Agreement contains the entire agreement  of the parties and supersedes any and all prior negotiations or understandings, whether written or oral.   No subsequent variance from, amendment to or modification of this Agreement shall be binding upon Company unless it is in writing, expressly provides that it is

intended as a variance, amendment or modification and is executed by an authorized officer of Company.

**18.  TIME OF THE ESSENCE**

Time is of the essence in this Agreement.  In the event of a cessation of the performance of services in compliance with any Order or in the event of Contractor's failure of timely performance or delay in delivery of materials and equipment, Company may immediately cancel the Order without further obligation to Contractor.

12/2009 Revision

## 19.   EXHIBITS

The following Exhibits and Riders are attached hereto and made a part of this Agreement for all purposes:

Exhibit A - Required Limits of Insurance

Exhibit B - Contractor's Certificates of Insurance

Exhibit C – Dallas/Fort Worth International Airport Work

Exhibit D -- Drug and Alcohol Free Workplace Policy

Exhibit E – List of Potential Hazards

Exhibit F – Contractor Disclosures Required under 9.2(b) of this Agreement

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement upon the date shown in several counterparts, each of which shall be considered as an original; however, the effective date shall be the date upon which services are first provided by Contractor, whether before or after the date first shown above.

COMPANY:

CHESAPEAKE OPERATING, INC.

By: _Stacy Roberts_
Title: Vice President - Risk Management
Date: _4.15.18_

CONTRACTOR:

C C FORBES COMPANY LP

By: _Steve Macek_  (Steve Macek)
Title: _Operations Manager_
Date: _2/12/10_

12/2009 Revision

CAUSE NO. 2017CI13500

| | | |
|---|---|---|
| **AARON MALDANADO** | § | **IN THE DISTRICT COURT** |
| *Plaintiffs,* | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **ADVANCED HYDROSTATIC, LLC,** | § | **285ᵀᴴ JUDICIAL DISTRICT** |
| **CHESAPEAKE ENERGY** | § | |
| **CORPORATION, CHESAPEAKE** | § | |
| **ENERGY MARKETING, L.L.C., AND** | § | |
| **CHESAPEAKE OPERATING L.L.C.** | § | |
| *Defendants.* | § | **BEXAR COUNTY, TEXAS** |

### PLAINTIFFS' FIRST AMENDED ORIGINAL
### PETITION & REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Aaron Maldonado, complains of Advanced Hydrostatic, LLC, Chesapeake Energy Corporation, Chesapeake Energy Marketing, L.L.C., and Chesapeake Operating L.L.C. hereinafter referred to by name or as Defendants, and for cause of action would show unto the Court the following:

### I.
### DISCOVERY LEVEL

1.      Plaintiffs intend that discovery be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

### II.
### PARTIES/SERVICE

2.      Plaintiff, Aaron Maldonado, is an individual who resides in Kleberg County, Texas.

3.      Defendant, Advanced Hydrostatic, LLC, is a Texas corporation and was served with citation by serving its registered agent, Marc A. Moore, at 4305 Briarcliff, Wichita Falls, Texas 76309.

1

**EXHIBIT 2**

4.     Defendant, Chesapeake Energy Marketing, L.L.C., is a Texas corporation and was served with citation by serving its registered agent, C.T. Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

5.     Defendant, Chesapeake Energy Corporation, is a foreign corporation doing oil and gas business in the State of Texas and was served with citation by serving its registered agent, Chesapeake Energy Corporation, 301 Commerce St., Fort Worth, Texas 76102.

6.     Defendant, Chesapeake Operating L.L.C., is a foreign corporation doing oil and gas business in the State of Texas and will be served with citation by serving its registered agent, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136. This defendant will be served with citation by a private process server.

### III.
### VENUE/JURISDICTION

7.     Venue is proper in Bexar County, Texas as at least one defendant resided and did business in Bexar County, Texas at the time the cause of action accrued, pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(2).

8.     Venue is proper before this Court under § 15.002(a)(1) of the Texas Civil Practice & Remedies Code because Bexar County, Texas, is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

9.     This is a civil liability case. It has become necessary to bring this suit to collect a legal debt of money for damages due and owing to Plaintiff as a result of the severe injuries Plaintiff sustained.

2

## IV.
## FACTS AND CLAIMS

10.    On or about July 9, 2016, Plaintiff was working on an oil rig operated by Chesapeake Energy Corporation. While Plaintiff was on the platform helping other workers set up the tubing anchor, an employee form Advanced Hydrostatic—without notifying plaintiff or any other workers— began removing his chord and equipment from the derrick. While removing his chord, it fell roughly 100 feet and became caught on a "shifter" that operated a set of pipe clamps. The Advanced Hydrostatic employee, without looking attempted to dislodge the chord by pulling on it. This activated the shifter which caused the pipe clamps to lift off the ground by a cable and continue towards the tubing basket. The pipe clamps collided with the tubing basket, the cable that held them broke, and the pipe clams fell back to the platform. The substantial force of the falling pipe clams colliding with the platform threw Plaintiff into the air, where he landed on his side and back, causing significant injury.

## IV.
## CAUSES OF ACTION AGAINST ADVANCED HYDROSTATIC, LLC.

### A. NEGLIGENCE

11.    Plaintiffs would show that Advanced Hydrostatic, LLC was negligent in causing and contributing to Plaintiff's Injuries in one of more of the following respects:

   a.    Failing to properly inform plaintiff and other workers that their work was being done;

   b.    Failing to investigate why their cord was caught, rather than pulling on it and activating the pipe clamps;

   c.

   d.    Failing to provide adequate training to its employees concerning safety of their work;

   e.    Failing to provide proper supervision of its employees;

   f.    Failing to maintain a safe work environment;

3

g.      Failing to provide adequate safety protection and equipment;

h.      Allowing a known dangerous and unsafe condition to exist;

i.      Failing to cure the known dangerous and unsafe condition;

j.      Failing to warn Plaintiff of the known dangerous and unsafe condition;

k.      Failing to adhere to industry safety standards; and

l.      Failing to retain employees with the requisite background that would have prevented the incident leading to the injury of Plaintiff.

Each of these acts and/or omissions, whether taken singularly or in any combination constitutes negligence and gross negligence which proximately caused Plaintiff's injuries and other losses as specifically set forth herein.

### B. GROSS NEGLIGENCE

12.     Plaintiffs incorporate each of the previous and foregoing paragraphs as if set forth in full in this section.

13.     The conduct of Advanced Hydrostatic, LLC in connection with the injury of Plaintiff constitutes gross negligence that was a proximate cause of his injuries and damages. The conduct of Advanced Hydrostatic, LLC was more than momentary thoughtlessness or inadvertence. When viewed objectively, Advanced Hydrostatic, LLC's conduct involved an extreme degree of risk, considering the probability and magnitude of harm to others. Advanced Hydrostatic, LLC was subjectively aware of and knew of this extreme risk, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including Plaintiff. Therefore, Plaintiff is entitled to recover punitive damages pursuant to sections 41.003(a)(2) and (3) of the Texas Civil Practices and Remedies Code, Article XVI, section 26 of the Texas Constitution, and Texas law.

4

14. Each of these acts and/or omissions, whether taken singularly or in any combination constitutes negligence and gross negligence which proximately caused the injuries of Plaintiff and other losses as specifically set forth herein.

## VII.
## CAUSES OF ACTION AGAINST CHESAPEAKE ENERGY CORPORATION, CHESAPEAKE ENERGY MARKETING, L.L.C., AND CHESAPEAKE OPERATING L.L.C.

### A. NEGLIGENCE

15. Plaintiff would show that Chesapeake Energy Corporation and Chesapeake Energy Marketing, L.L.C., were negligent in causing and contributing to Plaintiff's injury in one of more of the following respects:

    a.    Failing to properly inspect the equipment with regard to the oil derrick in question;

    b.    Failing to properly repair, service, and/or maintain the oil derrick in question;

    c.    Failing to provide adequate training to its employees concerning the inspection, maintenance, and repair of the oil derrick in question;

    d.    Failing to provide proper supervision of its employees;

    e.    Failing to maintain a safe work environment;

    f.    Failing to provide adequate safety protection and equipment;

    g.    Failing to report known dangers or conditions pertaining to the oil derrick in question;

    h.    Allowing a known dangerous and unsafe condition to exist;

    i.    Failing to cure the known dangerous and unsafe condition;

    j.    Failing to warn Plaintiff of the known dangerous and unsafe condition;

    k.    Failing to adhere to industry electrical and/or other applicable safety standards; and

    l.    Failing to retain employees with the requisite background that would have prevented the incident leading to Plaintiff's injuries.

Each of these acts and/or omissions, whether taken singularly or in any combination, constitutes negligence and gross negligence which proximately caused Plaintiff's injuries other losses as specifically set forth herein.

**B. GROSS NEGLIGENCE**

16.     Plaintiff incorporates each of the previous and foregoing paragraphs as if set forth in full in this section.

17.     The conduct of Chesapeake Energy Corporation and Chesapeake Energy Marketing, L.L.C., in connection with the incident giving rise to this suit constitutes gross negligence that was a proximate cause of Plaintiff's injuries and damages. The conduct of Chesapeake Energy Corporation and Chesapeake Energy Marketing, L.L.C., was more than momentary thoughtlessness or inadvertence. When viewed objectively, Chesapeake Energy Corporation and Chesapeake Energy Marketing, L.L.C., conduct involved an extreme degree of risk, considering the probability and magnitude of harm to others. Chesapeake Energy Corporation and Chesapeake Energy Marketing, L.L.C., were subjectively aware of and knew of this extreme risk, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including Plaintiff. Therefore, Plaintiff is entitled to recover punitive damages pursuant to sections 41.003(a)(2) and (3) of the Texas Civil Practices and Remedies Code, Article XVI, section 26 of the Texas Constitution, and Texas law.

18.     Each of these acts and/or omissions, whether taken singularly or in any combination constitutes negligence and gross negligence which proximately caused Plaintiff's injuries and damages as specifically set forth herein.

## C. PREMISES LIABILITY

19.    Chesapeake Energy Corporation and Chesapeake Energy Marketing, L.L.C., were in possession and/or control of the premises where Plaintiff was injured. Plaintiff was an invitee on Defendans' premises when he entered the premises with Defendants' knowledge and for their mutual benefit. There was a condition on the premises that posed an unreasonable risk of harm to Plaintiff and others similarly situated. The condition was such that the risk was so great that it was both unreasonable and foreseeable. Defendants knew or should have known of this unreasonable and foreseeable risk of harm to Plaintiff and others similarly situated. Defendants failed to adequately warn Plaintiff of the condition and failed to make the condition reasonably safe. Defendants' failure to warn Plaintiff of the condition and failing to make the condition reasonably safe was the proximate cause of Plaintiff's injuries.

20.    Chesapeake Energy Corporation and Chesapeake Energy Marketing, L.L.C., retained control over the manner in which work was performed on the distribution facility in question. Chesapeake Energy Corporation and Chesapeake Energy Marketing, L.L.C., had actual knowledge of the dangers or conditions resulting in Plaintiff's injury and failed to adequately warn Plaintiff and others similarly situated.

21.    Each of these acts and/or omissions, whether taken singularly or in any combination constitutes negligence and gross negligence which proximately caused the injuries and damages of the plaintiff and other losses as specifically set forth herein.

## V.
## RULE 47 – STATEMENT OF DAMAGES

22.    In accordance with Tex. R. Civ. P. 47(c), Plaintiff states that he seeks monetary relief over

$1,000,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest,

and attorney's fees, along with a declaratory judgment to which Plaintiff is entitled.

23.    Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff seeks monetary relief

over $1,000,000.00 and a demand for judgment for all other relief to which Plaintiff may justly be

entitled.

24.    Plaintiff further requests both pre-judgment and post judgment interest on all damages as

allowed by law.

25.    Plaintiff demands a trial by jury. Plaintiff acknowledges payment this date of the required

jury fee.

26.    Pursuant to Tex.R.Civ.P. 193.7, Plaintiff gives notice of intent to use documents produced

by any party hereto in any pretrial proceeding and at trial against the producing party.

## VI.
## REQUEST FOR RULE 194 DISCLOSURES

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to

disclose within fifty (50) days after service of the citation and petition the information or material

described in Rule 194.2 (a) through (l).

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendants be cited to

appear and answer, and on final trial hereafter, that Plaintiff has judgment against Defendants in

an amount within the jurisdictional limits of this Court, together with all pre judgment and post

judgment interest as allowed by law, costs of Court, and for such other and further relief to which

Plaintiff may be justly entitled by law and equity, including, but not limited to:

1.    Pain and suffering in the past;
2.    Pain and suffering in the future;
3.    Mental anguish in the past;

8

4.  Mental anguish in the future;
5.  Past medical expenses;
6.  Future medical expenses;
7.  Physical impairment in the past;
8.  Physical impairment in the future;
9.  Physical disfigurement in the past;
10. Physical disfigurement in the future;
11. Pre judgment interest;
12. Post judgment interest;
13. Exemplary damages;
14. Loss of past wages;
15. Loss of wage earning capacity;
16. Loss of enjoyment of life in the past;
17. Loss of enjoyment of life in the future;
18. Other damages to be proven at trial.

Respectfully submitted,

**The Law Offices of Thomas J. Henry**
521 Starr Street
Corpus Christi, Texas 78401
Phone:  (361) 985-0600
Fax:     (361) 985-0601

By: _____
Thomas J. Henry
State Bar No. 09484210
Jeffery E. Pratt
State Bar No. 16239980
Brian Gillette
State Bar No. 24091124
*email: jpratt-svc@tjhlaw.com
**\*Service by email to this address only**
**ATTORNEYS FOR PLAINTIFFS**

9

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the above and forgoing instrument was duly served upon the following in accordance with the Texas Rules of Civil Procedure on this the 1st day of September, 2017.

**VIA E-SERVICE AND REGISTERED MAIL**
Karl W. Koen
15643 Dallas Parkway, Suite 500
Dallas, Texas 75254
karl.koen@gkbklaw.com
*Attorney for Chesapeake Energy Corporation and*
*Chesapeake Energy Marketing, L.L.C.*

**VIA REGISTERED MAIL**
Marc A. Moore
4305 Briarcliff
Wichita Falls, Texas 76309
*Registered Agent for Advanced Hydrostatic, LLC*

Jeffery E. Pratt

10

Filed 3/8/2018 4:42 PM
Rachel P. Ramirez
District Clerk
Zavala County, Texas
Noelia Ramirez

18-03-14119-ZCV

CAUSE NO. _____

| | | |
|---|---|---|
| AARON MALDONADO | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| vs. | § | |
| | § | |
| ADVANCED HYDROSTATIC, LLC; | § | Zavala County - 365th District Court |
| CHESAPEAKE OPERATING, L.L.C.; | § | \_\_\_\_\_TH JUDICIAL DISTRICT |
| MIDESSA CONSULTING, LLC, LASARO | § | |
| GONZALEZ, INDIVIDUALLY, RAYMOND | § | |
| CASTANEDA, INDIVIDUALLY, and JIMMY | § | |
| KOLB, INDIVIDUALLY | § | |
| *Defendants.* | § | ZAVALA COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES AARON MALDONADO, Plaintiff herein, and complains of ADVANCED

HYDROSTATIC, LLC; CHESAPEAKE OPERATING, L.L.C.; MIDESSA CONSULTING, LLC;

LASARO GONZALEZ, INDIVIDUALLY; RAYMOND CASTANEDA, INDIVIDUALLY AND

JIMMY KOLB, INDIVIDUALLY, hereinafter referred to by name or as Defendants, and for cause of

action would respectfully show unto the Court as follows:

### DISCOVERY LEVEL

1. Plaintiff intends that Discovery be conducted in this case according to Level III

discovery control plan.

### PARTIES/SERVICE

2. Plaintiff is an individual residing in Kleberg County, Texas.

3. Defendant, ADVANCED HYDROSTATIC, LLC, is a Texas corporation and may be

served with citation by serving its registered agent, Marc A. Moore, at 4305 Briarcliff, Wichita Falls,

Texas 76309.

4. Defendant, CHESAPEAKE OPERATING, L.L.C., is a foreign corporation conducting oil and gas business in the State of Texas and may be served with citation by serving its registered agent, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

5. Defendant MIDESSA CONSULTING, LLC, is a Texas corporation and may be served with citation by serving its registered agent, Keith McKelvy, at 5904 Dog Leg Court, Granbury, Texas 76049-4184.

6. Defendant LASARO GONZALEZ is an individual and may be served with citation at his residence 151 E. Obregon Street, Dilley, Texas 78017.

7. Defendant RAYMOND CASTANEDA is an individual and may be served with citation at his residence 218 E. Colunga Street, Dilley, Texas 78017.

8. Defendant JIMMY KOLB is an individual and may be served with citation at his residence 14 Jitterbug Road, Crystal City, Texas 78839-0870.

### VENUE

9. Venue is proper in Zavala County, Texas pursuant to Texas Civil Practices and Remedy Code Section 15.002(a)(2) as Defendant JIMMY KOLB is a resident of Zavala County, Texas. As venue is proper in Zavala County as to Defendant JIMMY KOLB, venue is proper as to all other Defendants as the claims and causes of action against each Defendant arise from the same occurrence. TEXAS CIVIL PRACTICE AND REMEDIES CODE SECTION 15.005. Further, the corporate defendants, and each of them, do sufficient business in, or has sufficient minimum contacts with, or intentionally avails itself of the markets of the State of Texas through its business operations in Texas, including Zavala County.

10. This is a cause of action, exceeds $1,000,000.00 in damages and is within the Court's jurisdictional limits.

## FACTS

11. This case arises out of injuries and damages sustained by AARON MALDONADO on or about July 9, 2016. Plaintiff was working on an oil rig operated by Defendant Chesapeake Operating, LLC. Operations at the oil rig were under the supervision of ~~Chesapeake's agent,~~ Defendant Midessa Consulting, LLC and its employee, Defendant Jimmy Kolb. While Plaintiff was on the platform helping other workers set up the tubing anchor, employees of Advanced Hydrostatic, LLC including Defendant Lasaro Gonzalez and Defendant Raymond Castaneda – without notifying Plaintiff or any other workers – began removing equipment from the derrick. In the process of removing equipment, the Advanced Hydrostatic employees tied a sash cord to their operating cable and fed this through the sheave at the top of the derrick. The end of the sash cord became caught on a "shifter" that operated a set of pipe clamps. The Advanced Hydrostatic employee or employees, without looking, attempted to dislodge the cord by pulling on it. This activated the shifter which caused the pipe clamps to rapidly lift off the ground by a cable and continue towards the tubing basket. The pipe clamps collided with the tubing basket, the cable that held them broke, and the pipe clamps fell back to the platform. The substantial force of the falling pipe clamps colliding with the platform threw Plaintiff into the air, where he landed on his side and back, causing significant injury.

12. Further, Defendant CHESAPEAKE OPERATING, L.L.C, contracted with Defendant MIDESSA CONSULTING, LLC and its employee, Defendant JIMMY KOLB, to oversee, manage, supervise and control the work being performed at the facility by Plaintiff and Defendants ADVANCED HYDROSTATIC, LLC and its employees, Defendants LASARO GONZALEZ and RAYMOND CASTANEDA.

13.    Defendants knew of the hazards that resulted in the pipe clamps falling onto the platform of the oil rig. In the course of their business activities at the oil rig site, Defendants failed to follow reasonable safety practices to prevent the incident that injured Plaintiff.

14.    As a result of this incident Plaintiff sustained severe injuries and damages as further set out below.

15.    The occurrence made the basis of this suit, reflected above, and the resulting injuries and damages were proximately caused by the negligent conduct of the Defendants.

## DEFENDANT CHESAPEAKE OPERATING, L.L.C.

### NEGLIGENCE

16.    Defendant CHESAPEAKE OPERATING, L.L.C. owed a duty to Plaintiff to provide a safe place to work, free from hazards and to conduct its operations in a way that would minimize the risk of serious injury or death of their workers. Defendant breached its duties to Plaintiff by:

      (a)    failing to take action to avoid the dropping of the pipe clamps onto the platform;

      (b)    failure to implement and follow safety procedures;

      (c)    failing to inspect the platform for potential hazards;

      (d)    failing to provide equipment sufficient to eliminate the risks to Plaintiff and other workers;

      (e)    failing to accurately evaluate the risk of injury to Plaintiff and other workers;

      (f)    failing to advise or communicate to Plaintiff and other workers the risks associated with the activities Defendants were performing at the time of the incident;

      (g)    failing to warn Plaintiff and other workers of the risks associated with the activities Defendants were performing at the time of the incident;

      (h)    failing to order Plaintiff and other workers not to continue working until the risks of injury were eliminated;

     (i)    failing to prevent Plaintiff and other workers from continuing to work on the unsafe platform until the risks of injury were eliminated;

     (j)    failing to adequately monitor, plan for, and supervise the activities being performed by Plaintiff and other workers at the time of his injuries;

     (k)    failing to adequately train, hire, and supervise workers to minimize the risks to Plaintiff and other workers; and

     (l)    failing to appoint or provide a safety director or supervisor qualified and competent to assess risks to Plaintiff and other workers.

17.    Defendant CHESAPEAKE OPERATING, L.L.C. was further negligent in:

     (a)    retaining control of the method and/or manner of work performed by Plaintiff and others at the rig;

     (b)    directing the actions and work of the Plaintiff;

     (c)    having actual knowledge of the potential hazards, including the ongoing work of others on or near the platform that endangered Plaintiff and other workers;

     (d)    failing to warn adequately Plaintiff, and others, of the known hazards; and

     (e)    failing to take reasonable steps to counter the known hazards.

18.    Defendant's failure to utilize reasonable steps to mitigate the known hazards and/or failure to adequately warn Plaintiff of the known hazards while actively directing and controlling the manner and method of work performed was the proximate cause of the incident, the resulting injuries and damages to Plaintiff.

## NEGLIGENT UNDERTAKING

19.    Plaintiff expressly sues Defendant CHESAPEAKE OPERATING, L.L.C. for negligent undertaking. Texas law recognizes that a defendant may be held liable under a negligent undertaking theory when (1) the defendant voluntarily undertook to perform services that it knew or should have known were necessary for the plaintiff's protection, (2) the defendant failed to exercise reasonable care in performing those services, and either (3) the plaintiff relied upon the defendant's

performance or (4) the defendant's performance increased the plaintiff's risk of harm. Defendant undertook to perform services that it knew or should have known were necessary for the protection of employees, contractors and visitors to the oil rig, including Plaintiff. Defendant failed to exercise reasonable care in performing those services. Defendant knew or should have known the extreme risk of having multiple work parties engaged in separate activities on the oil rig simultaneously. Defendant failed to create, or failed to implement, a specific procedure to reduce the known risk. Defendant's failure to create and/or follow the procedure needlessly exposed Plaintiff to a known risk without use of readily available safeguards. Plaintiff relied upon the performance of Defendant to his detriment. Defendant's failure to exercise reasonable care in performing the services increased the risk of harm to Plaintiff. Defendant's failure to reasonably and adequately perform the services undertaken proximately caused the occurrence, injuries and damages to Plaintiff.

20.     Defendant's breach of its duties proximately caused the injuries and damages suffered by Plaintiff. Further, the acts and/or omissions of Defendant outlined above constitute gross negligence, in that Defendant's negligence was great or excessive, or negligence in a very high degree, and Defendant knew of the imminent danger to Plaintiff and other workers, yet persisted in its negligence without regard to the safety or welfare of Plaintiff.

21.     As described herein, each of these acts and/or omissions, whether taken singularly or in any combination constitute negligence, negligence per se, gross negligence and malice which proximately caused the incident and injuries and other losses as specifically set forth herein, all of which Plaintiff suffered and which he will continue to suffer in the future, if not for the remainder of his natural life, and the damages and other losses to Plaintiff.

## PREMISES LIABILITY

22.    Defendant CHESAPEAKE OPERATING, L.L.C. was in possession and/or control of the premises where Plaintiff was injured on the date of the incident. Plaintiff was an invitee on Defendant's premises. Plaintiff entered the premises with Defendant's knowledge and for their mutual benefit. There was a condition on the premises that posed an unreasonable risk of harm to Plaintiff and others similarly situated. The condition was such that the risk was so great that it was both unreasonable and foreseeable. Defendant knew or should have known of this unreasonable and foreseeable risk of harm to Plaintiff and others similarly situated. Defendant failed to adequately warn Plaintiff of the condition and failed to make the condition reasonably safe. Defendant's failure to warn Plaintiff of the condition and failing to make the condition reasonably safe was the proximate cause of Plaintiff's injuries.

23.    Defendant CHESAPEAKE OPERATING, L.L.C. had actual knowledge of the dangers or conditions which resulted in Plaintiff's injury and failed to adequately warn Plaintiff and others similarly situated.

24.    Each of these acts and/or omissions, whether taken singularly or in any combination constitutes negligence and gross negligence which proximately caused the injuries and damages of the plaintiff and other losses as specifically set forth herein.

## DEFENDANT MIDESSA CONSULTING, LLC.

## NEGLIGENCE

25.    Defendant MIDESSA CONSULTING, LLC, owed a duty to Plaintiff to provide a safe place to work, free from hazards and to conduct their operations in a way that would minimize the risk of serious injury or death of their workers. Defendant breached its duty to Plaintiff by:

(a)     failing to take action to avoid the dropping of the pipe clamps onto the platform;

(b)     failure to implement and follow safety procedures;

(c)     failing to inspect the platform for potential hazards;

(d)     failing to provide equipment sufficient to eliminate the risks to Plaintiff and other workers;

(e)     failing to accurately evaluate the risk of injury to Plaintiff and other workers;

(f)     failing to advise or communicate to Plaintiff and other workers the risks associated with the activities Defendants were performing at the time of the incident;

(g)     failing to warn Plaintiff and other workers of the risks associated with the activities Defendants were performing at the time of the incident;

(h)     failing to order Plaintiff and other workers not to continue working until the risks of injury were eliminated;

(i)     failing to prevent Plaintiff and other workers from continuing to work on the unsafe platform until the risks of injury were eliminated;

(j)     failing to adequately monitor, plan for, and supervise the activities being performed by Plaintiff and other workers at the time of his injuries;

(k)     failing to comply with applicable local, state and federal regulations governing the work;

(l)     failing to make the conditions reasonably safe;

(m)     failing to properly supervise the work;

(n)     failing to control the workplace condition;

(o)     failing to perform its work with ordinary care under the circumstances;

(p)     failing to adequately train, hire, and supervise workers to minimize the risks to Plaintiff and other workers; and

(q)     failing to appoint or provide a safety director or supervisor qualified and competent to assess risks to Plaintiff and other workers.

26.    Defendant MIDESSA CONSULTING, LLC is also negligent in one or more of the following respects:

        (a)    Negligent hiring of Defendant JIMMY KOLB;

        (b)    Negligent training of Defendant JIMMY KOLB;

        (c)    Negligent supervision of Defendant JIMMY KOLB; and

        (d)    Negligent retention of Defendant JIMMY KOLB.

27.    Defendant's breach of its duties proximately caused the injuries and damages suffered by Plaintiff. Further, the acts and/or omissions of Defendant outlined above constitute gross negligence, in that Defendant's negligence was great or excessive, or negligence in a very high degree, and Defendant knew of the imminent danger to Plaintiff and other workers, yet persisted in its negligence without regard to the safety or welfare of Plaintiff.

28.    As described herein, each of these acts and/or omissions, whether taken singularly or in any combination constitute negligence, negligence per se, gross negligence and malice which proximately caused the incident and injuries and other losses as specifically set forth herein, all of which Plaintiff suffered and which he will continue to suffer in the future, if not for the remainder of his natural life, and the damages and other losses to Plaintiff.

### NEGLIGENT UNDERTAKING

29.    Plaintiff expressly sues Defendant MIDESSA CONSULTING, LLC for negligent undertaking. Texas law recognizes that a defendant may be held liable under a negligent undertaking theory when (1) the defendant voluntarily undertook to perform services that it knew or should have known were necessary for the plaintiff's protection, (2) the defendant failed to exercise reasonable care in performing those services, and either (3) the plaintiff relied upon the defendant's performance or (4) the defendant's performance increased the plaintiff's risk of harm. Defendant undertook to

perform services that it knew or should have known were necessary for the protection of employees, contractors and visitors to the oil rig, including Plaintiff. Defendant failed to exercise reasonable care in performing those services. Defendant knew or should have known the extreme risk of having multiple work parties engaged in separate activities on the oil rig simultaneously. Defendant failed to create, or failed to implement, a specific procedure to reduce the known risk. Defendant's failure to create and/or follow the procedure needlessly exposed Plaintiff to a known risk without use of readily available safeguards. Defendant conducted operations on the oil rig, including the area where Plaintiff was assigned to work and did so without consideration of the extreme risk created by others working in the same and/or adjacent area of the oil rig. Plaintiff relied upon the performance of Defendant to his detriment. Defendant's failure to exercise reasonable care in performing the services increased the risk of harm to Plaintiff. Defendant's failure to reasonably and adequately perform the services undertaken proximately caused the occurrence, injuries and damages to Plaintiff.

30.     Defendant's breach of its duties proximately caused the injuries and damages suffered by Plaintiff. Further, the acts and/or omissions of Defendant outlined above constitute gross negligence, in that Defendant's negligence was great or excessive, or negligence in a very high degree, and Defendant knew of the imminent danger to Plaintiff and other workers, yet persisted in its negligence without regard to the safety or welfare of Plaintiff.

31.     As described herein, each of these acts and/or omissions, whether taken singularly or in any combination constitute negligence, negligence per se, gross negligence and malice which proximately caused the incident and injuries and other losses as specifically set forth herein, all of which Plaintiff suffered and which he will continue to suffer in the future, if not for the remainder of his natural life, and the damages and other losses to Plaintiff.

## DEFENDANT ADVANCED HYDROSTATIC, LLC

### NEGLIGENCE

32.   Defendant ADVANCED HYDROSTATIC, LLC, owed a duty to Plaintiff conduct

their operations in a way that would minimize the risk of serious injury or death of their workers and

those within the work area.  Defendant breached its duties to Plaintiff by:

(a)   failing to provide appropriate instructions for the work being performed;

(b)   failing to assess the workplace to determine if hazards were present or were likely to be present;

(c)   failing to verify that the required workplace hazard assessment had been performed;

(d)   failing to obtain available information regarding other operations in and/or near the oil rig;

(e)   failing to reasonably monitor the work site for potential hazards;

(f)   failing to warn the workers of the risks of its activities at the oil rig;

(g)   failing to adequately inspect the oil rig in general and the subject work in particular;

(h)   failing to confirm no others present in the area where the work was being performed;

(i)   failing to adequately supervise the work;

(j)   failing to implement procedures that would avoid, eliminate or diminish the conditions that resulted in the incident;

(k)   failing to comply with applicable local, state and federal regulations governing the work;

(l)   failing to make the conditions reasonably safe;

(m)   failing to properly supervise the work;

(n)   failing to control the workplace condition;

  (o) failing to perform its work with ordinary care under the circumstances; and

  (p) other culpable conduct.

  33. Defendant ADVANCED HYDROSTATIC, LLC is also negligent in one or more of the following respects:

  (a) Negligent hiring of Defendant LASARO GONZALEZ;

  (b) Negligent training of Defendant LASARO GONZALEZ;

  (c) Negligent supervision of Defendant LASARO GONZALEZ;

  (d) Negligent retention of Defendant LASARO GONZALEZ;

  (e) Negligent hiring of Defendant RAYMOND CASTANEDA;

  (f) Negligent training of Defendant RAYMOND CASTANEDA;

  (g) Negligent supervision of Defendant RAYMOND CASTANEDA; and

  (h) Negligent retention of Defendant RAYMOND CASTANEDA.

  34. Defendant's breach of its duties proximately caused the injuries and damages suffered by Plaintiff. Further, the acts and/or omissions of Defendant outlined above constitute gross negligence, in that Defendant's negligence was great or excessive, or negligence in a very high degree, and Defendant knew of the imminent danger to Plaintiff and other workers, yet persisted in its negligence without regard to the safety or welfare of Plaintiff.

  35. As described herein, each of these acts and/or omissions, whether taken singularly or in any combination constitute negligence, negligence per se, gross negligence and malice which proximately caused the incident and injuries and other losses as specifically set forth herein, all of which Plaintiff suffered and which he will continue to suffer in the future, if not for the remainder of his natural life, and the damages and other losses to Plaintiff.

## NEGLIGENT UNDERTAKING

36.     Plaintiff expressly sues Defendant ADVANCED HYDROSTATIC, LLC for negligent undertaking. Texas law recognizes that a defendant may be held liable under a negligent undertaking theory when (1) the defendant voluntarily undertook to perform services that it knew or should have known were necessary for the plaintiff's protection, (2) the defendant failed to exercise reasonable care in performing those services, and either (3) the plaintiff relied upon the defendant's performance or (4) the defendant's performance increased the plaintiff's risk of harm.  Defendant undertook to perform services that it knew or should have known were necessary for the protection of employees, contractors and visitors to the oil rig, including Plaintiff.  Defendant failed to exercise reasonable care in performing those services.  Defendant knew or should have known the extreme risk of having multiple work parties engaged in separate activities on the oil rig simultaneously.  Defendant failed manage its work in such a way as to ensure the safety of others present.  Defendant's failure to do so needlessly exposed Plaintiff to a known risk without use of readily available safeguards.  Defendant conducted operations on the oil rig, including the area where Plaintiff was assigned to work and did so without consideration of the extreme risk created by others working in the same and/or adjacent area of the oil rig.  Plaintiff relied upon the performance of Defendant to his detriment.  Defendant's failure to exercise reasonable care in performing the services increased the risk of harm to Plaintiff.  Defendant's failure to reasonably and adequately perform the services undertaken proximately caused the occurrence, injuries and damages to Plaintiff.

37.     Defendant's breach of its duties proximately caused the injuries and damages suffered by Plaintiff.  Further, the acts and/or omissions of Defendant outlined above constitute gross negligence, in that Defendant's negligence was great or excessive, or negligence in a very high

degree, and Defendant knew of the imminent danger to Plaintiff and other workers, yet persisted in its negligence without regard to the safety or welfare of Plaintiff.

38.  As described herein, each of these acts and/or omissions, whether taken singularly or in any combination constitute negligence, negligence per se, gross negligence and malice which proximately caused the collision and injuries and other losses as specifically set forth herein, all of which Plaintiffs suffered and which they will continue to suffer in the future, if not for the remainder of their natural lives, and the damages and other losses to Plaintiffs.

## DEFENDANT JIMMY KOLB

### NEGLIGENCE

39.  Defendant JIMMY KOLB had a duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under circumstances similar to those described herein.

40.  Plaintiff's injuries were caused by Defendant JIMMY KOLB and his negligent, careless and reckless disregard of his duty by:

    (a)  failing to provide appropriate instructions for the work being performed;

    (b)  failing to assess the workplace to determine if hazards were present or were likely to be present;

    (c)  failing to verify that the required workplace hazard assessment had been performed;

    (d)  failing to obtain available information regarding other operations in and/or near the oil rig;

    (e)  failing to reasonably monitor the work site for potential hazards;

    (f)  failing to warn the workers of the risks of its activities at the oil rig;

    (g)  failing to adequately inspect the oil rig in general and the subject work in particular;

(h)    failing to confirm no others present in the area where the work was being performed;

(i)    failing to adequately supervise the work;

(j)    failing to implement procedures that would avoid, eliminate or diminish the conditions that resulted in the incident;

(k)    failing to comply with applicable local, state and federal regulations governing the work;

(l)    failing to ensure the conditions were reasonably safe;

(m)   failing to properly supervise the work;

(n)    failing to control the workplace condition; and

(o)    failing to ensure all work at the oil rig was completed with ordinary care under the circumstances.

41.    Each of these acts and/or omissions, whether taken singularly or in any combination constitute negligence, negligence per se, gross negligence and malice which proximately caused the collision and injuries and other losses as specifically set forth herein, all of which Plaintiff suffered and which he will continue to suffer in the future, if not for the remainder of his natural life.

## DEFENDANT LASARO GONZALEZ

## NEGLIGENCE

42.    Defendant LASARO GONZALEZ had a duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under circumstances similar to those described herein.

43.    Plaintiff's injuries were caused by Defendant LASARO GONZALEZ and his negligent, careless and reckless disregard of his duty by:

(a)    failing to assess the workplace to determine if hazards were present or were likely to be present;

(b) failing to verify that the required workplace hazard assessment had been performed;

(c) failing to obtain available information regarding other operations in and/or near the oil rig;

(d) failing to reasonably monitor the work site for potential hazards;

(e) failing to warn the workers of the risks of his activities at the oil rig;

(f) failing to confirm no others present in the area where the work was being performed;

(g) failing to comply with applicable local, state and federal regulations governing the work; and

(h) failing to ensure the conditions were reasonably safe.

44. Each of these acts and/or omissions, whether taken singularly or in any combination constitute negligence, negligence per se, gross negligence and malice which proximately caused the collision and injuries and other losses as specifically set forth herein, all of which Plaintiff suffered and which he will continue to suffer in the future, if not for the remainder of his natural life.

## DEFENDANT RAYMOND CASTANEDA

### NEGLIGENCE

45. Defendant RAYMOND CASTANEDA had a duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under circumstances similar to those described herein.

46. Plaintiff's injuries were caused by Defendant RAYMOND CASTANEDA and his negligent, careless and reckless disregard of his duty by:

(a) failing to assess the workplace to determine if hazards were present or were likely to be present;

(b) failing to verify that the required workplace hazard assessment had been performed;

(c)    failing to obtain available information regarding other operations in and/or near the oil rig;

(d)    failing to reasonably monitor the work site for potential hazards;

(e)    failing to warn the workers of the risks of his activities at the oil rig;

(f)    failing to confirm no others present in the area where the work was being performed;

(g)    failing to comply with applicable local, state and federal regulations governing the work; and

(h)    failing to ensure the conditions were reasonably safe.

47.    Each of these acts and/or omissions, whether taken singularly or in any combination constitute negligence, negligence per se, gross negligence and malice which proximately caused the collision and injuries and other losses as specifically set forth herein, all of which Plaintiff suffered and which he will continue to suffer in the future, if not for the remainder of his natural life.

## EXEMPLARY DAMAGES

48.    The above-referenced acts and/or omissions by Defendants constitute malice as that term is defined in Section 41.001(7)(B) Texas Civil Practice and Remedies Code. Defendants were heedless and reckless, constituting an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were aware of the risk but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including Plaintiff. The above acts and/or omissions were singularly and cumulatively the proximate cause of the occurrence in question and the resulting injuries and damages sustained by Plaintiff.

49.    Defendants' acts or omissions described above, when viewed from the standpoint of Defendants at the time of the act or omission, involved an extreme degree of risk, considering the probability of harm to Plaintiff and others.

50.    Defendants had actual, subjective awareness of the risk involved in the above described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff and others.

51.    Therefore, for such malice on behalf of Defendants, Plaintiff sues for exemplary damages in an amount to be determined at trial.

## DAMAGES

52.    As a direct and proximate result of the incident and the negligent/gross negligent conduct of the Defendants, Plaintiff AARON MALDONADO suffered severe injuries and damages including multiple contusions to his back and other parts of his body generally. Plaintiff's body was bruised, battered and contused and he suffered great shock to his entire nervous system. The injuries are permanent in nature. The injuries have had a serious effect on the Plaintiff's health and well-being. Some of the effects are permanent and will abide with the Plaintiff for a long time into the future, if not for his entire life. These specific injuries and their ill effects have, in turn, caused the Plaintiff's physical and mental condition to deteriorate generally and the specific injuries and ill effects alleged have caused and will, in all reasonable probability, cause the Plaintiff to suffer consequences and ill effects of this deterioration throughout his body for a long time in the future, if not for the balance of his natural life. As a further result of the nature and consequences of his injuries, the Plaintiff suffered great physical and mental pain, suffering and anguish and in all reasonable probability, will continue to suffer in this manner for a long time into the future, if not for the balance of his natural life.

53.    Plaintiff has incurred expenses for medical care and attention. These expenses were incurred for the necessary care and treatment of the injuries resulting from the incident complained of. The charges are reasonable and were the usual and customary charges made for such services in

the County where they were incurred. There is a reasonable probability that Plaintiff will require further medical care and attention and will incur future reasonable and necessary expenses for his medical care and attention.

54.    As such, Plaintiff seeks to recover the following damages as a result of the incident in question:

(a)    medical expenses incurred by Plaintiff for medical treatment in the past and, in all medical expenses Plaintiff will likely incur in the future;

(b)    physical impairment and disability Plaintiff has suffered in the past and, in reasonable likelihood, will suffer in the future;

(c)    physical disfigurement Plaintiff has suffered in the past and, in all reasonable likelihood, will suffer in the future;

(d)    loss of wages incurred by Plaintiff in the past and, in reasonable likelihood, Plaintiff will incur in the future;

(e)    loss of past and future earning capacity;

(f)    pain and suffering Plaintiff has suffered in the past and, in reasonable likelihood, Plaintiff will suffer in the future;

(g)    mental anguish Plaintiff has suffered in the past and, in reasonable likelihood, Plaintiff will suffer in the future;

(h)    pre-judgment and post-judgment interest and court costs as allowed by law; and

(i)    Exemplary damages.

## RULE 47 STATEMENT OF DAMAGES

55.    In accordance with Tex. R. Civ. P. 47(c), Plaintiff states that he seeks monetary relief over $1,000,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees, along with a declaratory judgment to which Plaintiff is entitled.

## PREJUDGMENT AND POST-JUDGMENT INTEREST

56.     Plaintiff further requests both pre-judgment and post-judgment interest on all damages as allowed by law.

## JURY DEMAND

57.     In accordance with Rule 216 of the Texas Rules of Civil Procedure, Plaintiff hereby makes application for a jury trial and request that this cause be set on the Court's Jury Docket. Plaintiff acknowledges payment this date of the required jury fee.

## 193.7 NOTICE

58.     Pursuant to Tex.R.Civ.P. 193.7, Plaintiff gives notice of intent to use documents produced by any party hereto in any pretrial proceeding and at trial against the producing party.

## REQUEST FOR RULE 194 DISCLOSURES

59.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose within fifty (50) days after service of the citation and petition the information or material described in Rule 194.2 (a) through (l).

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff requests the Defendants be cited to appear and answer, and on final trial hereafter, the Plaintiff have judgment against Defendants, jointly and severally, in an amount within the jurisdictional limits of this Court, together with all pre judgment and post judgment interest as allowed by law, costs of Court, and for such other and further relief to which Plaintiff may be justly entitled by law and equity, including, but not limited to:

    1.    Pain and suffering in the past;
    2.    Pain and suffering in the future;
    3.    Mental anguish in the past;
    4.    Mental anguish in the future;
    5.    Past medical expenses;
    6.    Future medical expenses;
    7.    Physical impairment in the past;

8.  Physical impairment in the future;
9.  Physical disfigurement in the past;
10. Physical disfigurement in the future;
11. Pre judgment interest;
12. Post judgment interest;
13. Exemplary damages;
14. Loss of past wages;
15. Loss of future wages; and
16. Loss of wage earning capacity;

Respectfully submitted,
LAW OFFICES OF THOMAS J. HENRY
521 Starr Street
Corpus Christi, Texas 78401
Telephone: 361-985-0600
Facsimile: 361-985-0601

BY: _____

THOMAS J. HENRY
STATE BAR NO. 09484210
CURTIS W. FITZGERALD, II
STATE BAR NO. 24012626
*EMAIL: cfitzgerald-svc@tjhlaw.com
ATTORNEYS FOR PLAINTIFF

*service by email to this address only.



**CHESAPEAKE**
*ENERGY*

Will T. Jordan
*Attorney – Southern Division*

August 14, 2017

**VIA CERTIFIED MAIL (9414 8149 0108 4218 1123 30)**

CC Forbes, LLC
P.O. Box 250
Alice, TX 78333

Re:    *Aaron Maldonado v. Advanced Hydrostatic, LLC et al.*, Cause No. 2017CI13500; At Law
No. 285; Bexar County, Texas

Dear Contractor:

Enclosed herewith is a copy of the Petition filed by Aaron Maldonado against Advanced Hydrostatic, LLC et al. in the District Court, At Law Number 285, Bexar Co., Texas. The lawsuit stems from alleged injuries sustained by CC Forbes, LLC employee Aaron Maldonado, on or about July 9, 2016, while working on Chesapeake's McKenzie M 2H well, located in McMullen County, Texas.

Pursuant to Paragraph 6.2 of the Master Service Agreement ("MSA") dated February 12, 2010 (the "MSA") between Chesapeake Operating, Inc. n/k/a Chesapeake Operating, L.L.C. (collectively "Chesapeake") and CC Forbes Company LP (CC Forbes, LLC, CC Forbes Company LP and all affiliates and subsidiaries are collective referred to as "CC Forbes") ("MSA"), CC Forbes is obligated to protect, defend, and indemnify Chesapeake, and affiliates, and its invitees from and against all claims, demands, and causes of action filed by Mr. Maldonado. Demand is hereby made that CC Forbes fully protect, defend, and indemnify Chesapeake from and against such claims.

Additionally, pursuant to paragraph 6.2 of the MSA, CC Forbes is obligated to protect, defend, and indemnify Advanced Hydrostatic, as Chesapeake's invitee. Section 9.4 of the MSA provides that the MSA is governed under Oklahoma law. Under Oklahoma law an independent contractor (here Advanced Hydrostatic) doing work on another's premises is an invitee. See *Davis v. Whitsett*, 1967 OK 190, 435 P. 2d 592, 594-95 and *Wausau v. United States of America*, 73 F. 3d 373. Section 6.2 of the MSA provides that Advanced Hydrostatic will defend and indemnify Chesapeake's invitees against claims brought by employees of CC Forbes. Therefore, as a matter of law, CC Forbes is required to defend and indemnify Advanced Hydrostatic along with Chesapeake from and against all claims, demands, and causes of action filed by Aaron Maldonado.

Please immediately confirm in writing that CC Forbes will notice its insurer of the claims, and will fully protect, defend, and indemnify Chesapeake and Advanced Hydrostatic against the claims, demands, and causes of actions brought by Aaron Maldonado.

Once established, please provide me with the name and contact information of the law firms hired to defend Chesapeake and Advanced Hydrostatic in this matter.

EXHIBIT 3

CC Forbes, LLC
August 14, 2017
Page 2

Regards,

Will T. Jordan

Enclosures

cc:     Lloyds of London
        C/O Lockton Companies
        5847 San Felipe, Suite 320
        Houston, TX 77057

HILARY S. ALLEN
MARK E. BIALICK
ALEXANDRA BUTTS BRADY
JENNIFER K. CHRISTIAN
R. RYAN DELIGANS
BRYAN C. DIXON, JR.
DAVID B. DONCHIN
GERALD E. DURBIN, II
ANDREW M. GUNN†
DAVID L. KEARNEY



**DURBIN LARIMORE BIALICK**

ATTORNEYS

THOMAS R. KENDRICK
JAMES K. LARIMORE
KATHERINE TAYLOR LOY
TIMOTHY L. MARTIN
GLEN MULLINS
LANE R. NEAL
E. EDD PRITCHETT, JR.
KACI L. TROJAN

*Of Counsel:*

STEPHEN A. SHERMAN

†*Also Admitted in Texas*

December 13, 2017

*Sent Via Federal Express*
*Signature Required*
Forbes Energy Services, Ltd.
Attn: Michelle White
3000 South Business Highway 281
Alice, Texas 78332

*Sent Via Federal Express*
*Signature Required*
C.C. Forbes, LLC
4783 S. Highway 281
Alice, TX 78333

*Sent Via Certified Mail*
*Return Receipt*
C.C. Forbes, LLC
P.O. Box 250
Alice, TX 78333

Re:  *Aaron Maldonado v. Advanced Hydrostatic, LLC, Chesapeake Energy Corporation,*
*Chesapeake Energy Marketing, LLC, and Chesapeake Operating, LLC*
Claim for Injuries by Advanced Hydrostatic Employee, Aaron Maldonado
Date of Incident: 7/9/2016
Our File No.: 3444.0018
Cause No. 2017C113500 (285th Judicial District, Bexar County, TX)

Ms. White:

Please be advised that I have been retained to represent Chesapeake Operating, LLC., in regard to the above-referenced matter.

As we are certain you are aware, pursuant to the terms of the MSA entered on February 12, 2010 (attached as Exhibit 1), Chesapeake Operating, L.L.C., f/k/a Chesapeake Operating, Inc. (collectively "Chesapeake") is an additional insured under a general liability policy and an umbrella liability policy issued by Lloyds of London ("Lloyds") to CC Forbes ("Policies"). A copy of the policies are attached as Exhibit 2.

As per Chesapeake's May 2, 2017 and August 14, 2017 letters, copies of which are attached hereto as Exhibits 3 and 4, Chesapeake demands CC Forbes, LLC ("CC Forbes") defend and indemnify Chesapeake in connection with alleged injuries sustained by employee Aaron Maldonado, on or about July 9, 2016, while working on Chesapeake's McKenzie M 2H well, located in McMullen County, Texas. Attached as Exhibit 5 is a copy of the First Amended Petition, Request

Forbes Energy Services, Ltd.
December 13, 2017
Page 2

for Disclosure, as well as Chesapeake's Answer to the Petition, and Special Exceptions. Also, included as Attachment 6 is Forbes Energy Service's Summary of Events.

Nearly six (6) months has passed since Chesapeake first sent its letter advising you of this situation and requesting Forbes immediately meet its obligation to defend and indemnity Chesapeake. There is no excuse for your lack of response to these letters.

In addition to indemnifying Chesapeake, this shall also serve as a formal demand that you agree to defend and indemnify Chesapeake's invitee, Advanced Hydrostatic, which Chesapeake is obligated to defend and indemnify, and has retained counsel to defend. Under the terms of the Agreement, the obligation to defend and indemnify Advanced Hydrostatic passed through to you and Forbes.

This shall serve as a formal demand for the assumption of the defense and indemnity of Chesapeake and Advanced Hydrostatic in this matter. If you cannot or will not do so, Chesapeake reserves the right to settle the case on a basis it deems fair and reasonable, and will pursue recovery of those amounts from you and any other responsible party.

We look forward to your prompt response.

Sincerely.

David B. Donchin

DBD:jy



# CHESAPEAKE
## *ENERGY*

**Teresa Baumann**
*Attorney*

Thursday, May 03, 2018

## VIA CERTIFIED MAIL (9414 8149 0108 4218 3897 49)

CC Forbes Company, LP
P.O. Box 250
Alice, TX 78333

Re:     Personal Injury Claim of Aaron Maldonado

Dear Contractor:

Enclosed herewith is a copy of a letter from Travelers dated March 23, 2017 ("Letter 1"), submitted to Chesapeake Operating, Inc. on behalf of Advanced Hydrostatic Services, LLC ("Advanced Hydrostatic").

Also enclosed herewith is a copy of a letter from Steven D. Selbe dated April 29, 2018 ("Letter 2"), submitted to Chesapeake Energy Corporation on behalf of Midessa Consulting, LLC ("Midessa") and Jimmy Kolb.

Letter 1 and Letter 2 make demand for defense and indemnity in connection with alleged injuries sustained by C C Forbes Company, LP ("C C Forbes") employee Aaron Maldonado, on or about July 9, 2016, while working on Chesapeake's McKenzie M 2H well, located in McMullen County, Texas.

Pursuant to Paragraph 6.2 of the Master Service Agreement ("MSA") dated February 12, 2010 (the "MSA") between Chesapeake Operating, Inc. n/k/a Chesapeake Operating, L.L.C. (collectively "Chesapeake") and C C Forbes Company, LP ("MSA"), C C Forbes, and any affiliate or subsidiary, is obligated to protect, defend, and indemnify Chesapeake from and against all claims, demands, and causes of action filed by Mr. Maldonado. Demand is hereby made that C C Forbes fully protect, defend, and indemnify Chesapeake from and against such claims.

Additionally, pursuant to paragraph 6.2 of the MSA, C C Forbes is obligated to protect, defend, and indemnify Advanced Hydrostatic and its employees, and Midessa and its employees, as Chesapeake's invitee. Section 9.4 of the MSA provides that the MSA is governed under Oklahoma law. Under Oklahoma law an independent contractor (here Advanced Hydrostatic and Midessa) doing work on another's premises is an invitee. See *Davis v. Whitsett*, 1967 OK 190, 435 P. 2d 592, 594-95 and *Wausau v. United States of America*, 73 F. 3d 373. Section 6.2 of the MSA provides that Advanced Hydrostatic and Midessa will defend and indemnify Chesapeake's invitees against claims brought by employees of C C Forbes. Therefore, as a matter of law, C C Forbes is required to defend and indemnify Advanced Hydrostatic and Midessa along with Chesapeake from and against all claims, demands, and causes of action filed by Aaron Maldonado.

As you are probably aware, Aaron Maldonado nonsuited the lawsuit he filed in Bexar County on or around March 2, 2018 (the "Bexar County Lawsuit"), and filed a new lawsuit in Zavala County

on or around March 8, 2018 (the "Zavala County Lawsuit"). A copy of the petition for the Zavala County Lawsuit is enclosed herewith.

Please immediately confirm in writing that C C Forbes will continue to fully protect, defend, and indemnify Chesapeake, Advanced Hydrostatic and Midessa against the Bexar County Lawsuit, the Zavala County Lawsuit and any additional claims, demands, and causes of actions brought by Aaron Maldonado.

Additionally, please be advised that Chesapeake intends to contact Mr. Maldonado in an effort to resolve any claims or causes of action he may have against Chesapeake and/or its invitees. In the event Chesapeake is able to reach a resolution with Mr. Maldonado, it will look to C C Forbes for reimbursement pursuant to C C Forbes' clear obligation to protect, defend and indemnify Chesapeake and its invitees.

Regards,

Teresa Baumann

Enclosures

2