IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHESAPEAKE OPERATING, L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:20-CV-557-R |
| | ) |
| C.C. FORBES, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant C.C. Forbes, LLC's ("Forbes") Second Motion to Dismiss, in which Forbes requests that the Court abstain from exercising its jurisdiction. Doc. No. 14. Chesapeake responded in opposition, Doc. No. 20, and Forbes then filed a reply in support of its motion. Doc. No. 21. The Court finds as follows.

Chesapeake, an oil and gas exploration and production company, entered a "Master Services Agreement" ("MSA") with Forbes, an oil-and-gas service provider, on February 12, 2010. Doc. No. 7, ¶¶ 9–12. The MSA included an indemnification provision stating that the

> [Forbes] agrees to protect, defend, indemnify and hold harmless [Chesapeake], its officers, directors, employees or their invitees, and any working interest owner or non-operator for whom [Chesapeake] is obligated to perform services, from and against all claims, demands, and causes of action of every kind and character . . . arising in connection herewith in favor of [Forbes's] employees, Contractor's subcontractors or their employees, or [Forbes's] invitees on account of bodily injury, death or damage to property.

Doc. No. 7-1, ¶ 6.2.

Years after the agreement, on September 1, 2017, Aaron Maldanado filed suit in state court in Bexar County, Texas ("the *Maldanado* action") for personal injuries he suffered in an incident on a Chesapeake rig on July 9, 2016 in McMullen County, Texas. Doc. No. 20, p. 2. In response, Chesapeake "made demand upon Forbes for indemnity and defense" under the MSA because Maldanado was a Forbes employee at the time of the incident. *Id.* Chesapeake alleges that "Forbes failed to fully perform its contractual obligations to defend and indemnify Chesapeake," requiring Chesapeake to resolve the *Maldanado* action without receiving the "full contribution owed by Forbes." *Id.* (citing Doc. 7 at 6, ¶¶ 20–21). In response, Chesapeake filed suit against Forbes in the District Court of Oklahoma County on April 2, 2020 ("the present action"), alleging that Forbes breached the MSA. Doc. No. 1-2, p. 1. Forbes then removed the present action to this Court on June 12, 2020, pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446. Doc. No. 1.

Meanwhile, on January 29, 2020, a different Chesapeake rig suffered a loss of control and killed three onsite workers in Burleson County, Texas. Doc. No. 20-6, p. 7. In response, several parties sought relief in state courts across Texas. *Id.* The mother of one of the deceased, Linda Milanovich, filed suit against Chesapeake in Burleson County, Texas on January 31, 2020 ("the *Milanovich* action"). Doc. No. 20-1, p. 1. Chesapeake then filed a third-party demand against Forbes in the *Milanovich* action, "seeking a declaratory judgment concerning those parties' obligations to defend and indemnify Chesapeake with respect to any claims arising out of the January 29, 2020 incident." Doc. No. 20, p. 3 (citing Doc. No. 14-1). Nine related cases arising out of the January 29, 2020

incident are pending in Dallas County, Texas, before the Texas Multidistrict Litigation ("MDL") Panel. Doc. No. 20, p. 4.

The *Milanovich* action, however, remains in Burleson County, Texas. *Id.* It is currently stayed pending "Chesapeake's motion for assignment of the Dallas County cases to an MDL court." *Id.* In addition, Chesapeake filed a petition for bankruptcy on June 28, 2020, and filed a notice of suggestion of bankruptcy in *Milanovich* the next day, after which the *Milanovich* action was also stayed pending the bankruptcy court's order.[1] *Id.*

Despite properly invoking this Court's removal jurisdiction, Forbes requests that the Court abstain from exercising its jurisdiction under the *Colorado River* abstention doctrine. Doc. No. 14, p. 1.

Generally, as between state and federal courts, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court …". *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The Supreme Court has stated that "[a]bdication of the [district court's] obligation to decide cases can be justified under this doctrine only in … exceptional circumstances [which] … serve an important countervailing interest." *Colorado River*, 424 U.S. at 813 (quoting *Allegheny Cty. v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)). However, in *Colorado River*, the Supreme Court held that despite "fall[ing] within none of the [previous]

---

[1] The Bankruptcy Code imposes an automatic stay of litigation against a debtor for claims arising prior to the commencement of the bankruptcy case. *See* 11 U.S.C. § 362(a). Thus, the bankruptcy action automatically stayed the *Milanovich* action. However, the plaintiffs in the *Milanovich* action filed a Motion for Relief from the Automatic Stay, which remains pending before the United States Bankruptcy Court for the Southern District of Texas. *In re: Chesapeake Energy Corporation, et. al*, Case No. 20-332-33-DRJ, Doc. No. 1448 (filed Oct. 19, 2020), available at https://dm.epiq11.com/case/chesapeake/dockets.

abstention categories …[,] considerations of '(w)ise judicial administration'" counseled against exercising jurisdiction of the concurrent federal action and warranted dismissal. *Colorado River*, 424 U.S. at 817, 820. The Court reasoned that the extensive involvement of state water rights, the adequacy of the state forum, and the lack of extensive proceedings in the district court, among other things, justified dismissal. *Id.* at 820. Forbes, relying on *Colorado River*, urges the Court to dismiss the present action to avoid duplicative litigation.

In determining whether *Colorado River* applies to this action, the Court "must *first* determine whether the state and federal proceedings are parallel." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (emphasis added). If the suits are deemed parallel, the court then applies the *Colorado River* factors adopted by the Tenth Circuit in *Fox*. 16 F.3d at 1082. The factors include "(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction." *Id.* Additionally, in *Fox*, the Tenth Circuit explained that courts should also consider factors described by the Supreme Court in *Moses H. Cone*, including (5) whether there is a "vexatious or reactive nature of either the federal or the state action; [(6)] whether federal law provides the rule of decision; and [(7)] the adequacy of the state court action…". *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18 n. 20, 23, 28 (1983)). The Court need not address the factors from *Colorado River* here, however, because the suits are not parallel.

The Tenth Circuit has stated that "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* (quoting *New Beckley Mining*

*Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991)). Proving that the two actions are substantially the same does not require the "exact identity of parties and issues . . .". *United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002) (citing *Fox*, 16 F.3d at 1081). Further, the Court evaluates the state and federal actions as they actually exist, not how one party hypothetically could have sought relief. *BNSF Ry. Co. v. Brown*, 250 F.R.D. 544, 547 (D. Kan. 2008).

Granting Forbes's motion "under the *Colorado River* doctrine would be a 'serious abuse of discretion' unless 'the parallel state-court litigation [is] an adequate vehicle for the *complete* and *prompt* resolution of the issue between the parties…". *Fox*, 16 F.3d at 1081 (emphasis added) (citing *Moses H. Cone*, 460 U.S. at 28). In *Fox*, the Court further explained that "[t]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case…". *Id.* at 1081–82.

A federal court should not enter a stay under the *Colorado River* doctrine unless it has "full confidence" that the parallel state litigation will end the parties' dispute. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988). When two distinct factual disputes give rise to actions interpreting the same contract provision, courts have held that resolving one claim will not resolve the other, and that therefore, the actions are not parallel. *See e.g.*, *Gator Horizon Partners, Ltd. v. Horizon Park Partners, LLC*, No. 16-CV-1936-WJM-CBS, 2017 WL 345674, at *3 (D. Colo. Jan. 23, 2017) (citing *Gulfstream*, 485 U.S. at 277). In *Gator Horizon Partners*, pending state and federal actions between two adjoining landowners arose from separate factual scenarios. 2017 WL

345674, at *2. Both actions involved the same contractual provision requiring "[e]ach party … [to] use reasonable efforts to require its Occupants … to park vehicles within its respective tract." *Id.* However, the state court dispute arose from a set of facts that occurred in 2011, while the federal court dispute arose from a set of facts that occurred in 2015. *Id.* at *3. Accordingly, the court held that the factual distinction between the two cases eliminated the court's "full confidence" that the state court dispute could adequately resolve the parties' federal court dispute, and therefore, it denied the defendant's motion to stay or dismiss. *Id.* at *4.

Similarly, Chesapeake argues that the present action and the *Milanovich* action are not parallel because they arose from "different incidents occurring at different times on different rigs…" and therefore, "the cases aren't even transactionally related…". Doc. No. 20, pp. 5–6. While Forbes counters that "in each case Chesapeake has asserted *the exact same contractual rights for declaration and determination by the court*…", Doc. No. 21, p. 2 (emphasis in original), the Court finds that the two proceedings are not parallel because different facts underlie each claim and the *Milanovich* action does not provide a prompt resolution.

First, while the disputes in the *Milanovich* action and the present action concern the same MSA provision, each arose from different factual scenarios. Doc. No. 20, p. 6. In *Gator Horizon Partners*, two actions interpreting the same provision between the same parties were not parallel because they arose from separate factual scenarios. 2017 WL 345674, at *2. Similarly, here, the *Milanovich* claim arose from the January 29, 2020 incident in Burleson County, Texas and the present action originated from Maldanado's

injuries in the July 9, 2016 incident in McMullen County, Texas. Doc. No. 1-2, p. 62; Doc. No. 14-1, p. 3. In *Milanovich*, Chesapeake brought a "Third-Party Petition" against Forbes seeking a declaratory judgment that Forbes "ha[d] a contractual duty to protect, defend, [and] indemnify … Chesapeake for any claim, demand, or cause of action arising out of the Incident." Doc. No. 14-1, p. 6. Thus, Forbes's liability in *Milanovich* hinges on the indemnity provision's application to the Burleson County incident while here, Chesapeake seeks damages for Forbes's alleged breach under the same provision, but from its settlement with Maldanado without contribution from Forbes. Doc. No. 7, ¶ 27. Thus, the two actions are not parallel because they are not litigating the same factual scenarios.

Second, the *Milanovich* action will not provide a "prompt resolution." On June 28, 2020, "Chesapeake Energy Corporation and its subsidiaries … filed voluntary petitions for relief under chapter 11…". Doc. No. 20-7, p. 1. Accordingly, "*Milanovich* is currently stayed … as the result of stay orders issued by both the MDL Panel and the bankruptcy court." Doc. No. 20, p. 10. Thus, it is unclear when the litigation in *Milanovich* will resume and therefore, *Milanovich* does not provide a "prompt resolution" to the parties' claims.

Alternatively, Chesapeake argues that the *Colorado River* doctrine does not warrant abstention because there is an enforceable, mandatory forum selection clause that requires the parties to litigate in the District Court of Oklahoma County or the United States District Court for the Western District of Oklahoma.[2] Doc. No. 20, p. 9. Forbes argues that

---

[2] The Forum Selection Clause states that

> [t]he Parties agree that any dispute arising out of or relating to this Contract shall only be commenced or filed in the District Court of Oklahoma County or the United States District Court

7

the forum selection clause should not be enforced because Chesapeake "*previously chose to seek relief in ... Burleson County*." Doc. No. 21, p. 3–4 (emphasis in original).

"[A]bsent compelling reasons otherwise, forum selection clauses are enforceable." *Howard Family Charitable Found., Inc. v. Trimble*, 259 P.3d 850, 862 (Okla. Civ. App. 2011). Oklahoma law governs the forum selection clause in this dispute because the parties agreed for its interpretation to be governed by Oklahoma law.[3] *See Transcon. Gas Pipe Line Co., v. G.A. West & Co.,* , No. 17-CV-0050-CVE-FHM, 2017 WL 1536233, at *1 (N.D. Okla. Apr. 27, 2017) ("[A] forum selection clause should be interpreted in accordance with the law chosen by the contracting parties.") (citing *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 428 (10th Cir. 2006) (citing Restatement (Second) of Conflict of Laws § 204(a))).

The forum selection clause here is mandatory because it "contains clear language demonstrating litigation is appropriate in only a designated forum*." See Beverly Enters.–Tex., Inc. v. Devine Convalescent Care Ctr.*, 273 P.3d 890, 894 (Okla. Civ. App. 2012) (citing *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 316, 321 (10th Cir. 1997)). Specifically, the clause states that "any dispute arising out of or relating to this

---

> for the Western District of Oklahoma. The Parties agree to consent to the jurisdiction of these courts and that they are the sole and exclusive judicial forums for any litigation between the parties.

Doc. No. 7-2, ¶ 28.

[3] The Governing Law provision states that

> [t]his Contract shall be governed, construed and interpreted in accordance with the laws of Oklahoma without regard to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Oklahoma.

Doc. No. 7-2, ¶ 27.

Contract *shall only be commenced or filed*" in the District Court of Oklahoma County or the United States District Court for the Western District of Oklahoma. Doc. No. 7-2, ¶ 28 (emphasis added). The provision clearly "mandates … specific for[a] as the only venue[s]" appropriate for adjudicating claims between the parties. *Transcon.*, 2017 WL 1536233, at *2.

"Where there is a valid forum selection clause, the burden is on the party resisting enforcement to show that enforcement of the clause would be unreasonable under the circumstances." *Id.* (citing *Tucker v. Cochran Firm–Criminal Defense Birmingham LLC*, 341 P.3d 673, 683 (Okla. 2014)). Forbes has not met this burden. First, Forbes does not challenge the validity of the forum selection clause, but rather argues that Chesapeake already chose the venue for the parties' disputes—the court in Burleson County, Texas. Doc. No. 21, p. 4. Forbes argues that "[i]f Chesapeake did not want to pursue contractual determination of rights in Burleson County, it should not have asserted those rights in Burleson County." *Id.* However, there is an important distinction between "initially filing a complaint in a forum other than the one designated in a forum selection clause, and asserting third-party claims in a forum selected by a third-party to the contract containing the forum selection clause…". *CITGO Petroleum Corp. v. Home Serv. Oil Co.*, No. 09-CV-0503-CVE-PJC, 2009 WL 4348391, at *4 (N.D. Okla. Nov. 30, 2009). In *CITGO*, the district court explained that filing "contribution and indemnification claims in a forum selected by another party is not sufficient to waive" the application of a forum selection

9

clause.[4] *Id.* Similarly, here, Chesapeake did not commence the action in Burleson County, but rather brought its third-party claim against Forbes seeking a declaration that "Forbes must … defend [and] indemnify" Chesapeake for Milanovich's claims against it. Doc. No. 5, ¶ 21.

"Only a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice, would be sufficient to defeat a contractual forum selection clause." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992). While Forbes states that "[p]roceeding with litigation in the Western District of Oklahoma is clearly inconvenient and a duplicative waste of resources," Doc. No. 21, p. 4, Chesapeake argues that its principal place of business is in Oklahoma City and that "the conduct giving rise to this action occurred in Oklahoma County." Doc. No. 7, ¶¶ 1, 6. Forbes has not carried its burden to show that this Court is such an inconvenient forum that enforcing the forum selection clause would be contrary to public interest or public policy.

For the reasons set forth above, the Court therefore finds that the forum selection clause should be enforced.

In conclusion, *Colorado River* abstention is inappropriate here because the *Milanovich* action is not parallel to the present action. Even if it were, the parties executed a valid, enforceable forum selection clause agreeing to litigate disputes in either state court

---

[4] Additionally, the forum selection clause states that its fora are mandatory for the "*commence[ment] or fil[ing]*" of suit between the parties, indicating that third-party claims brought in response to a suit initiated by a third-party are beyond its scope. Doc. No. 7-2, ¶ 28.

in Oklahoma County or in this Court. Therefore, Forbes's Motion to Dismiss is DENIED in its entirety.

    **IT IS SO ORDERED** on this 20th day of November 2020.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE